HULDAH M. PECK *vs.* JAMES E. CONWAY & another.

Berkshire. Sept. 15, 1875. — March 9, 1876. AMES, DEVENS & LORD, JJ., absent.

A reservation in a deed of land, that no building is to be erected by the grantee, his heirs or assigns, upon the land conveyed, creates an easement, or a servitude in the nature of an easement, upon the land; and the situation of the land relatively to other land of the grantor may be considered in determining whether such easement or servitude is a personal right of the grantor or is appurtenant to his other land.

Parties deriving title under a recorded deed have constructive notice of its provisions; and it is immaterial that they have no actual knowledge thereof.

A., the owner of a large lot of land, conveyed a portion of it to B., with the reservation in the deed "that no building is to be erected by the said B., his heirs or assigns, upon the land herein conveyed." A. retained the rest of the lot as his homestead, and owned no other land in the vicinity; and afterwards sold the homestead lot to C. by a deed describing the land by metes and bounds, but making no mention of the reservation in the deed to B., or of privileges and appurtenances. B. afterwards sold to D. by a deed making no reference to the reservation, and D. had no knowledge thereof. All the deeds were duly recorded. *Held,* that it was to be inferred that A. and B. intended to create an easement on the granted land for the benefit of A.'s adjoining estate; that this easement passed as appurtenant to the land by the conveyance to C.; and that he could maintain a bill in equity to prevent D. from building on his land, although a proposed building would do no appreciable injury to C.'s land.

BILL IN EQUITY, by the owner of lot A. shown on the plan printed in the margin,* to restrain the defendants, the owners of lots B and C, from building on lot B.

The case was reserved by *Colt,* J., upon the pleadings and the report of a master, for the consideration of the full court, and was as follows:

Richard Ensign, on February 14, 1848, being the owner of lots A and B, and occupying lot A as a homestead, conveyed lot B, in fee simple, with general covenants of warranty, to Joseph B. Huggins, who was then the owner of lot C. The deed described the land by metes and bounds, and following the description was this clause: "with this express reservation, that no building is to be erected by the said Joseph B., his heirs or assigns, upon the land herein conveyed."

The defendants purchased lots B and C in 1874. Of the deeds in the chain of title from Huggins, which were all duly

recorded before the defendants purchased, some mentioned or referred to the reservation in Ensign's deed, but the deed to the defendants, which contained full covenants of warranty, made no mention of it or reference to former deeds. The defendants made no examination of the records before their purchase, and had no actual knowledge of the reservation.

The plaintiff purchased lot A of Richard Ensign by deed dated April 13, and recorded April 14, 1848. This deed made no mention of privileges or appurtenances, or of the reservation in the deed to Huggins. The defendants purchased their land, paying therefor its full market value, free of incumbrances, for the purpose of building thereon. The plaintiff notified them of the restriction before they commenced building, and forbade them so to do, and, upon their proceeding to build upon the land, brought this bill.

The master found that the greater part of the proposed building would stand upon lot B ; that it would not obstruct the view from the front rooms in the plaintiff's house, and only partially obstruct the view from the rooms in the rear part of the house; and that its erection would be no appreciable damage or injury to the plaintiff's premises.

*A. J. Waterman*, for the plaintiff.

*J. Dewey, Jr.*, for the defendants.

MORTON, J. Both parties derive title from Richard Ensign. The deed of said Ensign, under which, through various mesne conveyances, the defendants derive their title, conveys to Joseph B. Huggins a triangular piece of land adjoining the lot now owned by the plaintiff, " with this express reservation, that no building is to be erected by the said Joseph B., his heirs or assigns, upon the land herein conveyed." Ensign, being owner of the fee, had the right to sell his land subject to such reservations or restrictions as to its future use and enjoyment as he saw fit to impose, provided they were not contrary to public policy. The restriction in this deed, that no building should be erected upon the land conveyed, was one which he had a right to make, and there is no room for doubt, that, if a building was erected in violation of this restriction, Ensign, as long as he lived and remained the owner of the adjoining land, would be entitled to relief in equity to enforce the restriction. *Parker* v. *Nightin-*

*gale,* 6 Allen, 341. *Whitney* v. *Union Railway,* 11 Gray, 359. *Badger* v. *Boardman,* 16 Gray, 559.

The only question in the case is whether the plaintiff, who is the grantee of said Ensign, is entitled to the same remedy.

The reservation creates an easement, or servitude in the nature of an easement, upon the land conveyed. If this easement was created for the benefit of the adjoining lot, of which the grantor in the deed remained the owner, and not for the personal convenience of the grantor, and was intended to be annexed to such lot, it would be appurtenant thereto, and would pass to a grantee thereof.

The question whether such an easement is a personal right, or is to be construed to be appurtenant to some other estate, must be determined by the fair interpretation of the grant or reservation creating the easement, aided, if necessary, by the situation of the property and the surrounding circumstances.

In this case, the triangular piece of land affected by the easement was a part of a large lot owned by Ensign. He retained the remainder of the large lot for his homestead. There is no suggestion that he had other land in the vicinity, which could be benefited by the restriction. It is difficult to see how he would have any interest in restricting the use of the land sold, except as owner of the house lot which he retained. The nature of the restriction also implies that it was intended for the benefit of this lot. A prohibition against building on the land sold would be obviously useful and beneficial to this lot, giving it the benefit of better light and air and prospect; this is its apparent purpose, while it would be of no appreciable advantage for any other purpose. The fair inference is that the parties intended to create this easement or servitude for the benefit of the adjoining estate. We are therefore of opinion that it was not a mere personal right in Ensign, but was an easement appurtenant to the estate which he conveyed to the plaintiff. *Dennis* v. *Wilson,* 107 Mass. 591. *Stearns* v. *Mullen,* 4 Gray, 151. It follows that the plaintiff is entitled to the relief which she seeks.

The fact that the defendants, when they took their deed, had not actual knowledge of this reservation is immaterial. They derive their title under the deed which contains it, and have constructive notice of the provisions of the deed. *Whitney* v. *Union*

*Railway, ubi supra.* Nor can the fact found by the master, that the erection of the building contemplated by the defendants " would be no appreciable damage or injury to the plaintiff's premises," affect the rights of the parties. Such an act of the defendants would be against the restriction by which they are bound, and a violation of the rights of the plaintiff, of which she cannot be deprived, because in the judgment of others it is of little or no damage.                    *Decree for the plaintiff.*