SIMON VORENBERG *vs.* GEORGE W. BUNNELL & others.

Suffolk.   January 25, 1926. — November 11, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equitable Servitude. Equity Jurisdiction,* To enforce equitable servitude. *Zoning.*

A judge of the Superior Court, who heard a suit in equity by the owner of land at the northwesterly corner of Kenmore Street and Newbury Street in Boston to enjoin the erection and maintenance by the defendant of a public garage on the lot next westerly of the plaintiff's land in violation of restrictions imposed by the former common owner of the land of the parties in deeds dated 1872 and 1886, from detailed subsidiary findings concluded as to the area covered by the 1886 deed that "the purpose for which the restrictions were imposed has failed; that the area covered by the 1872 deed, if it ever could have been aptly described as a 'neighborhood for dwelling houses,' has ceased to be such; that owing to the growth of the city and the present use of the neighborhood for business purposes, the purpose for which the restrictions were imposed can no longer be accomplished; . . . and that the enforcement of the restrictions in this instance will not tend to restore to the neighborhood a residential character but will lessen the value of the defendants' land and will harass and injure them without effecting the purpose for which the restrictions were originally imposed." The judge refused to order an injunction, referred the suit to a master for assessment of damages, and reported his rulings to this court. *Held,* that, while the general conclusions by the judge as to the area covered

by the deeds dated 1872 and 1886 were supported by his subsidiary findings, his conclusions as to the limited area which was the subject of this suit were not supported by his subsidiary findings; and the suit was remanded to the Superior Court for the issuance of the injunction sought.

The zoning law of Boston, St. 1924, c. 488, cannot constitutionally relieve land within the district covered by it from lawful restrictions affecting its use for business purposes; the question, whether equity will specifically enforce such restrictions, is (as before the passage of that statute) a matter for the exercise of sound equitable discretion in the light of all attendant circumstances.

BILL IN EQUITY, filed in the Superior Court on March 30, 1925, against George W. Bunnell, the owner of certain land on Newbury Street in Boston, and the trustees of Mutual Realty Associates, mortgagees of the land, to restrain the erection and maintenance of a proposed public garage in alleged violation of certain equitable restrictions.

In the Superior Court, the suit was heard by *Weed,* J. Material facts found, conclusions drawn, an interlocutory decree ordered, and the terms of a report made by him to this court are described in the opinion.

*Lee M. Friedman & P. D. Turner,* for the plaintiff.

*E. Field,* for the defendant Bunnell.

*E. K. Arnold,* (*H. M. Williams* with him,) for the defendants Trustees of the Mutual Realty Associates.

PIERCE, J. This is a bill in equity brought against the defendants to restrain the erection and maintenance of a proposed public garage in alleged violation of certain equitable restrictions.

The plaintiff owns a vacant lot on the northwesterly corner of Newbury Street and Kenmore Street in the city of Boston, and as trustee owns the lot and dwelling house thereon numbered 504 Commonwealth Avenue, Boston, which is directly in front of a portion of the vacant lot above referred to. The defendant George W. Bunnell in November, 1924, (hereinafter referred to as the defendant) purchased from the other defendants a vacant lot on said Newbury Street bounded on the east by the vacant lot of the plaintiff, and caused plans to be prepared for the erection of a public garage thereon to cover the full area

of the land and designed for the storage of three hundred cars. As planned, the proposed building will have three stories at and above Newbury Street and one below, with two additional stories if the front wall under the restrictions of his title deeds must be not nearer to the said street than ten feet. "The proposed garage is to be of concrete construction with ramps connecting the several floors so that cars may proceed to any floor without the use of elevators. The ramps are to be in the easterly end of the building and at the front and rear pass close to the outer walls and windows. The entrance will be located on Newbury Street about one hundred and eighty-seven feet from the plaintiff's vacant lot, with an exit for emergency purposes only in the alleyway in the rear. The building will have considerable window spaces on all the floors, exterior 'garage' signs, an office, a room for the incidental sale of automobile accessories, and facilities for servicing cars such as washing, greasing, changing tires and supplying cars with gasoline and oil, with provision for this purpose for storing two thousand gallons of gasoline. These facilities are to be within the walls of the building. There are also to be chauffeurs' lounging rooms and lockers. No facilities are to be furnished for heavy repairs requiring skilled mechanics or any repairs not commonly done by owners or chauffeurs or floormen of garages. . . . The garage will be kept open twenty-four hours a day. The land on which the proposed garage is to be located is in a 'local business district' as established and defined by" St. 1924, c. 488.

Proceeding under said statute, Bunnell applied for and, after a contested hearing, obtained from the street commissioners of the city of Boston a license or permit for the erection and use of the proposed building as a garage. Upon obtaining the aforesaid license Bunnell started excavating for said building. On March 20, 1925, the plaintiff through his attorneys made and delivered to the defendant a formal written protest against the erection and use of the defendant's land for the proposed garage, "public or otherwise," as a violation of restrictions imposed on said land by deed of the Boston Water Power Company to Grenville T. W.

Braman and others and by deed of said Braman to Elmer P. Howe.

This suit was begun on March 30, 1925, and the defendant desisted from the further erection of said proposed building pending the outcome of the suit. Upon the filing of the answer, the case was heard and argued before a judge of the Superior Court. That judge made findings and an order for an interlocutory decree which reads: "Let an interlocutory decree issue in conformity with the foregoing finding and referring the case to a master to assess the plaintiff's damages." Thereupon, at the request of the plaintiff, the judge, under G. L. c. 214, § 30, stayed further proceedings and reported the matter for the consideration of this court "upon the pleadings and said finding and order for an interlocutory decree . . . with the stipulation of the parties that if, on the material facts found . . . the plaintiff is not entitled to an injunction, the bill is to be retained and remanded to this [the Superior] Court for the determination of the question of the plaintiff's damage in accordance with . . . [said] order hereinabove set forth; if on the material findings the plaintiff is entitled to an injunction, then an injunction is to be ordered and the case remanded to this court for that purpose."

The plaintiff's and defendant's lots of land are a part of a larger parcel of land, which at one time belonged to the Boston Water Power Company. March 1, 1872, the Boston Water Power Company conveyed, among other parcels, a parcel of land described in paragraph 3 of the bill of complaint to Grenville T. W. Braman and others; the parcels now the plaintiff's and the defendant's were a part of the parcel so conveyed to Braman. The land thus conveyed and the use thereof was subjected to the following restrictions and agreements: "No building shall be erected upon said land, (except outhouses to dwellings,) the exterior walls of which shall be of any other material than brick, stone or iron, nor shall any building erected thereon be used for livery stables, carpenter's shops, white or blacksmith's shops, or for foundry or manufacturing purposes, or for any other business which shall be offensive to the neighborhood for

dwelling houses; and all buildings erected thereon shall be of good class and not less than three stories in height, including basement, except church edifices, which may be of any required height; to which same restrictions the said Boston Water Power Company hereby agrees to and does subject its remaining lands lying in the Full Basin, so called of said Company northerly of the location of the Boston and Albany Railroad." This deed was recorded March 5, 1872, in the Suffolk registry of deeds and the answer of the defendant admits "that these restrictions were imposed for the purpose of keeping this property as a residential property as the use for which it was then believed to be best adapted."

As regards this land, the judge found as follows: "In 1872 that tract of land . . . described in the Boston Water Power Company's deed and including both the plaintiff's and defendant's lots, was a part of the 'full or receiving basin' of said company. Beacon Street ran along the crest of a dam and was known as the 'Mill Dam' road and Brookline Avenue ran along the crest of an intersecting dam and was known as the 'Punch Bowl' road. The Boston and Albany Railroad crossed the basin on a trestle. Thereafter the basin was filled in. That part of Commonwealth Avenue between the junction of Beacon Street and Brookline Avenue and Charlesgate West was laid out in 1879, Kenmore Street in 1893, and Newbury Street between Brookline Avenue and Charlesgate West and then known as West Newbury Street, in 1894." In 1886 Braman and others conveyed the last described parcel of land to one Elmer P. Howe and this deed was recorded June 1, 1886, in the Suffolk registry of deeds. As said above both the plaintiff's and the defendant's premises are included within this tract. This conveyance in terms was subject to the 1872 restrictions with the additional restrictive provision "that the front wall thereof on West Newbury Street shall be set back ten feet from said West Newbury Street . . . ."

As regards the parcel conveyed from Braman to Howe, the judge found as follows: "Prior to the Braman deed in 1886 no buildings had been erected in the tract conveyed by that deed, bounded by Commonwealth Avenue, Kenmore

and Newbury Streets and Brookline Avenue, and for that matter none in the entire area bounded by Commonwealth Avenue, Charlesgate West, Boston & Albany Railroad and Brookline Avenue . . . .

"Subsequently to 1886 lots were conveyed from time to time and buildings erected. The deeds thereof up to the deed to Bunnell referred directly or indirectly to the restrictions here under consideration." An attached sketch marked "A" shows all the buildings at the time when this suit was begun, the approximate year of erection and the use for which each building was designed when erected. "At the time when the plaintiff's house was built in 1896, no houses or other buildings had been erected on Newbury Street between Charlesgate West and Brookline Avenue save the fifteen three-story brick houses numbered 540 to 568 shown on said sketch on the southerly side of Newbury Street. These are still used as dwelling houses. No building has been erected within the area covered by the 1886 restrictions for use as a dwelling house . . . [meaning a building planned for the residence of but one family] since 1898, and no building therein originally erected as such dwelling house has been sold for that use since 1907. The only buildings erected for use as dwellings within the area covered by the 1872 restrictions since 1898 are the Charlesview, 536 Commonwealth Avenue, an apartment house erected in 1912, and the five small apartment houses on the southerly side of Newbury Street, numbered 574 to 590, erected in 1915, 1916.

"In 1915 the Boylston Street subway was completed and put in operation with cars reaching the surface and a station — Kenmore — on Commonwealth Avenue opposite the area under consideration. Shortly prior to this year business blocks had been erected on the further side of Beacon Street west of the Belvoir — an apartment house at the corner of Beacon and Raleigh Streets — and occupied for the sale of automobiles and accessories.

"In 1915 the concrete building next west of the defendant's land on Newbury Street was erected and has ever since been occupied and used by the Stewart Truck Company as a sales room and service station for Stewart trucks. For the past

two years the basement has been used as a public garage by a subtenant. . . . until shortly before the bringing of this suit, the plaintiff had made no objection to this use of the Stewart building.

"In 1917 the two buildings 526–528 and 530–532 [Commonwealth Avenue] were erected solely for business purposes,. the first being now occupied by the Kenmore Lunch and restaurant and the second by the Paige-Jewett automobile people for a salesroom and service station.

"In 1924 the Walton building at the corner of Commonwealth Avenue and Brookline Avenue was erected solely for business purposes and its stores are now occupied for a lunch room, automobile sales room and a bank. In 1924 a large commercial building shown on the sketch was begun and completed in 1925 on the southerly side of Newbury Street opposite the Stewart Truck building. It is not yet fully occupied. Its present tenants are a casket company and an automobile spring company. . . . shortly before the advent of the subway, the houses 510 to 524 Commonwealth Avenue have been gradually acquired by one owner who has connected them with one exception and adapted them for use as doctors' offices with a common entrance and elevator, and although otherwise unchanged physically they have ceased to be used as dwellings. The house 508 is owned by a dentist who occupies it in part for his offices and in part as a dwelling. The Charlesview is used to a considerable extent for doctors' offices, and also has basement stores. Certain of the houses between the Hotel Kenmore and Hotel Braemore are also used in considerable part by doctors' offices. At the present time the Hotel Kenmore is being enlarged in a tract to the east gained by the demolition of three dwelling houses and it is being connected physically with the Hotel Wadsworth and an addition thereto is now under erection on the vacant land adjoining. . . . the defendant trustees or some of them have been owners of or interested in the Bunnell land and . . . certain lots on Commonwealth Avenue directly north of it for more than twenty-five years and . . . have made persistent efforts to sell the same for dwelling house purposes without success. . . . fifty thousand motor and

horse drawn vehicles pass through Governor Square and over three thousand electric cars pass through the Kenmore Station, daily on week days; and . . . over thirty-six hundred motor and horse drawn vehicles pass through this part of Newbury Street daily on week days."

On the foregoing facts, which are intended to include all the pertinent facts of the findings, and on his view the judge as a conclusion of fact found "that the restrictions imposed in the 1872 deed were in furtherance of a general scheme for the development and improvement of a considerable area as well as of the granted parcel and were designed to create an attractive neighborhood given over in general to residential uses; that the purpose of the restrictions imposed in the 1886 deed including the ten foot set back from Newbury Street was similar; that said restrictions were imposed for the benefit of all purchasers claiming under the grantees named in said deeds; that the defendants' land is subject to said restrictions; that said restrictions are in the nature of easements appurtenant to the plaintiff's lots; that the plaintiff is entitled in equity to enforce the observance of the same; and that the plaintiff's right to relief is not affected by his failure to object to the erection and subsequent use of the Stewart Truck building." The judge also found that the business proposed to be carried on at the building which the defendant Bunnell is about to erect and for which said building is expressly designed would be offensive to the neighborhood for dwelling houses, and that the erection and maintenance of such a public garage would be a violation of the restrictions as to use and as to set back. He further found as to the area covered by the 1886 deed that "the purpose for which the restrictions were imposed has failed; that the area covered by the 1872 deed, if it ever could have been aptly described as a 'neighborhood for dwelling houses' has ceased to be such; that owing to the growth of the city and the present use of the neighborhood for business purposes, the purpose for which the restrictions were imposed can no longer be accomplished; that the changed conditions of the locality are due to causes other than the breach of said restrictions; and that the en-

forcement of the restrictions in this instance will not tend to restore to the neighborhood a residential character but will lessen the value of the defendants' land and will harass and injure them without effecting the purpose for which the restrictions were originally imposed."

The general conclusion of the judge that the area of land embraced in the deeds of 1872 and 1886 has ceased to be a neighborhood for dwelling houses, owing to the growth of the city and the present use of the neighborhood for business purposes, finds ample support in sketch "A," as also in the analytical findings of subsidiary facts. Having sole regard to the area covered by the deeds of 1872 and 1886 and considering it as a unit of terrestrial space, it is manifest the restrictions imposed in the deeds cannot be rigidly enforced. *Jackson* v. *Stevenson,* 156 Mass. 496. The plaintiff, however, not admitting but assuming for the purposes of this case that the whole area covered by the deeds of 1872 and 1886 has ceased as a whole to be a neighborhood for dwelling house purposes, calls attention specifically to the findings which, analyzed, establish the fact that in 1872 that part of Newbury Street which is now under consideration, including also that part covenanted by the Boston Water Power Company to be subjected to the same restrictions, had not then been laid out; that up to the interlocutory decree on September 28, 1925, with the exception of the Stewart Truck building erected in 1915, until the year 1924–1925, there was not erected on Newbury Street any building in use for other than dwelling house purposes; that there are now twenty-one single-family dwellings, nine apartment houses, and three apartment hotels on that street, a total of thirty-three buildings used for dwelling purposes as opposed to two buildings not so used; that, in the Braman-Howe 1886 tract, there were on Commonwealth Avenue, at the time of the hearing, twenty single-family dwelling houses, omitting three which are being replaced by the addition to the Kenmore Hotel, one apartment house, two apartment hotels and four buildings for business purposes, a total of twenty-three buildings for nonmercantile uses as contrasted with four used for business.

Giving consideration to the entire findings, which include the covenant of the Boston Water Power Company to make the same restrictions of its lands lying northerly of the Boston and Albany Railroad and easterly of Kenmore Street, and to the findings which directly concern the tract covered by the deed of Braman to Howe, in 1886, the plaintiff contends that there has been no material change affecting the character and use of the property on either side of Newbury Street as a residential district. And, assuming the facts found to be such, the plaintiff further contends that he is entitled in the protection of his equitable easement, a property right, to a decree which shall enjoin the use of lands on Newbury Street in violation of the common restrictives, although on the facts found he may not be entitled to restrain or enforce the restrictions as applied to other parts of the district. The position of the plaintiff is sound and is supported as a matter of authority by *Evans* v. *Foss*, 194 Mass. 513. *Daly* v. *Foss*, 199 Mass. 104. *Sayles* v. *Hall*, 210 Mass. 281, 284. *Bacon* v. *Onset Bay Grove Association*, 241 Mass. 417, 426. *Wilson* v. *Middlesex Co.* 244 Mass. 224, 232. *Allen* v. *Massachusetts Bonding & Ins. Co.* 248 Mass. 378, 387.

The zoning law, St. 1924, c. 488, cannot constitutionally relieve land within the district covered by it from lawful restrictions affecting its use for business purposes. The question, whether equity will specifically enforce such restrictions, is (as before the passage of that statute) a matter for the exercise of sound equitable discretion in the light of all attendant circumstances.

Accepting the findings as to all subsidiary matters, we think the conclusion of fact is too broad and clearly should not embrace within its terms Newbury Street. We are of opinion the injunction should issue as prayed for. It follows in accordance with the terms of the stipulation, *supra*, that the case is remanded to the Superior Court for that purpose.

*Decree accordingly.*