BENJAMIN A. ARMSTRONG ET AL. vs. ANTONIO
LEVERONE.

Second Judicial District, Norwich, October Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, JS.

Restrictive covenants inserted by a common grantor in deeds to
successive grantees for the benefit of a tract of land divided
by him into several parcels, are in the nature of a negative
or equitable easement and may be enforced by the grantees,
as against each other, through injunctive relief.

Having created the restrictions the grantor has thereafter no power
to discharge them or in any way to affect the equitable rights
of the grantees to enforce them.

If there is a publicly announced plan of uniform development of
the land in question involving restrictions upon all owners, a
grantee may enforce those which are contained in a deed to a
subsequent purchaser.

The evidence in the present case reviewed and held to support the
trial court's finding that the defendant's land was included
within a strip of beach front property reserved by the common
grantor for subdivision and development as a summer-cottage
colony and restricted against use for commercial purposes
except with the consent of three fourths of the owners.

The defendant claimed that such a consent, given in writing in 1905
by three fourths of the then owners to one W, must be con-
strued to apply to all the property, including the defendant's
lots, at the easterly end of the strip extending from the beach
front to a highway in the rear; and that, in any event, the
restrictions in question did not apply to this portion of the
strip. Held that there was no merit to either claim.

A plaintiff's right to equitable relief against a violation of such
restrictions is not dependent upon the existence or amount
of damage to him.

A plan or scheme of restricted real estate development will not be
deemed to have been altered to the extent that the restrictions
are thereby discharged, unless the changes in the conditions per-
taining to the property are so material as to indicate an aban-
donment of the original general purpose and to make its en-
forcement inequitable under the existing circumstances.

A defendant, who, with full knowledge of the existence of restric-
tions upon the uses of his property and in disregard of warn-
ings that a structure proposed by him will violate them, pro-

Armstrong *v.* Leverone.

ceeds at considerable expense with its erection even after the commencement of an action against him for an injunction, takes his chances as to the effect of his conduct with his eyes open to the results which may ensue and is in no position to resist the relief sought on the ground that, by failing to secure a preliminary restraining order, the plaintiffs have led him into a situation where the enforcement of the restrictions would impose upon him an inequitable and disproportionate loss.

Argued October 19th, 1926—decided January 28th, 1927.

ACTION for an injunction restraining the defendant from maintaining a store, restaurant or any place of business upon certain premises in the town of New London, brought to the Superior Court in New London County and tried to the court, *Nickerson, J.;* judgment for the plaintiffs, and appeal by the defendant. *No error.*

In 1892 Thomas M. Waller and James Hislop purchased a tract of land known as the Ocean Beach property and subsequently conveyed it to the Post Hill Improvement Company, a corporation. On May 5th, 1893, the corporation conveyed to the city of New London a large portion of the tract in question, lying between Bentley Avenue and the shore of Long Island Sound, but reserving to the grantor, out of the tract so conveyed, a strip of land about thirteen hundred and twenty feet in length and one hundred and ten feet in depth, extending along the beach front and bounded north on Bentley Avenue. The strip so reserved was divided by the corporation into fifty lots, each twenty-five feet wide, one lot of fifty feet frontage, and two public ways across the strip, each ten feet in width. After the conveyance to the city the corporation sold all of the fifty twenty-five foot lots, the same being subscribed for by purchasers and the choice being determined by lot at a meeting of the subscribers. Each of the deeds of these lots specified the lot by number as "designated . . . on the strip marked Re-

served on a map of said tract . . . filed in the Town Clerk's Office," and also particularly bounded and described the lot in question. Each deed contained the following provision: "This conveyance is made given and received upon the condition that there shall not be erected or maintained, without the consent of the owners of three quarters of the lots on said strip, any building or part of a building within ten (10) feet of the southerly or northerly side of the land herein conveyed, or any building costing less than three hundred and fifty (350) dollars, or any building to be used as a public bath house, store, restaurant, saloon, or for any other public purpose, or any building or shed to be used for horses provided the grantors hereof furnish at a cost of five dollars a year, a suitable shed for the shelter of horses and carriages for each of the owners of lots on the strip aforesaid, who may desire such accommodations." As a part of its general plan of development, the corporation also sold lots on the north side of Bentley Avenue with restrictions which, however, were limited to a period of ten years.

After the sale of these fifty lots, there remained unsold, of the strip so reserved from the land deeded to the city, the lot of about fifty feet frontage on the beach and one hundred and ten feet deep, located at the easterly end of the strip. This was then retained by the corporation with the idea that it might eventually be used for the building of a casino or club-house for the use of the owners of the other lots, and it was later marked "Casino Lot" on maps of the development. It was not used for that purpose, however, and in 1896, by deeds dated October 24th and November 16th, the Post Hill Improvement Company conveyed to Patrick H. Fitzgerald two tracts of land, together comprising the southerly portion (about one half) of this Casino lot, having a frontage on the beach of

Armstrong *v.* Leverone.

about forty-nine feet and a depth, for the most part, of fifty-six feet. The first of these deeds contained the following provision, among others: "This conveyance is made, given and received upon the condition that there shall not be erected or maintained without the consent of the owners of three-fourths of the lots on the strip marked 'Reserved Strip' on a map heretofore filed by the grantors in the office of the town clerk, any building or part of a building within ten feet of the northerly or southerly side of the land herein conveyed, or any building costing less than three hundred and fifty (350) dollars or any building to be used as a public bath house, store, restaurant, saloon or any other business purpose." A similar provision was also included in the second deed. The first deed also provided that the grantee "shall have the right to lease by the year bath houses on the lot herein conveyed, without the privilege of subletting."

On June 4th, 1894, the corporation sold to Edward S. Neilan and Patrick Dorsey, separately, cottage lots situated in the section northerly of Bentley Avenue and, in connection therewith, conveyed to each a lot, numbered one and seven, respectively, "of the Park Cottage Bathing House lots . . . being ten feet long by six feet in depth, the same to be used for private bathing houses only and said houses to be not more than fifteen feet in height and to be built in conformity to a plan of the Post Hill Improvement Company. No change of the use of said lot . . . or of the said height of the building to be made without the consent of the grantors and of owners of lots between said lot and the beach." These two bathing-house lots adjoined the northerly side of the lot conveyed to Fitzgerald on November 16th, 1896.

Subsequently the Post Hill Improvement Company made use of the portion of the land immediately north

for private bathing houses, which were rented for not less than one season to private persons, but no building was rented for or used as a public bathhouse.

In October, 1905, Arthur H. Wilkinson obtained from the owners of more than three fourths of the lots of land on the reserved strip written consent "to sell confectionery, ice cream, soda water, pop corn, cigars, etc., on the lot of land situated on the southwest corner of Bentley Avenue and the main thoroughfare to the beach." At approximately the same time, October 6th, 1905, the Post Hill Improvement Company, by quitclaim deed, conveyed to Wilkinson a "certain lot of land with the buildings thereon standing . . . bounded and described as follows: Northerly by Bentley Avenue; easterly by land of the city of New London; southerly by land of the estate of Patrick H. Fitzgerald and westerly by Charles D. Boss." The land so conveyed was situated northerly and easterly of the Fitzgerald lot and in the northeast corner of the reserved strip, and the description included the bathing-house lots which had been conveyed to Neilan and Dorsey.

On May 19th, 1920, trustees of the estate of Patrick H. Fitzgerald, deceased, conveyed to the defendant the same land conveyed to Fitzgerald by the deeds of October 24th and November 16th, 1896, above mentioned. The exceptions from incumbrances, in the trustees' deed, included "any valid restrictions referred to in deed of said Post Hill Improvement Company to Patrick H. Fitzgerald, except in so far as the same have been removed by lapse of time, changed conditions of Ocean Beach, or otherwise." Afterward, on June 28th and August 13th, 1920, the defendant obtained quitclaims of the Neilan and Dorsey bathing-house lots.

In August, 1920, the defendant erected, on the Fitz-

Armstrong *v.* Levcrone.

gerald land, a wooden structure, and started therein a store for the sale of merchandise. The complaint in this action was served October 21st, 1920. About a year after the commencement of this suit the defendant removed the first structure and erected a building two and one half stories in height, the lower floor of which he has since used and is now using as a public store for retail mercantile business.

On April 21st, 1921, the heirs and devisees of Wilkinson conveyed to the defendant the premises conveyed to Wilkinson by the deed of October 6th, 1902. Other pertinent facts found by the trial court are mentioned in the opinion.

*Arthur T. Keefe,* with whom, on the brief, was *John C. Geary,* for the appellant (defendant).

*Charles B. Waller,* for the appellees (plaintiffs).

HINMAN, J. Many of the reasons of appeal relate to attempted corrections of the findings by the excision of facts essential to the plaintiff's cause and the substitution of statements apposite to the defendant's contentions. Thorough perusal and analysis of the finding and draft-finding and the evidence which is before us, although the court also viewed the premises, fails to disclose that any intrinsic fact has been found without evidence or that any material fact sought to be inserted in the finding, and not already present in substance, is admitted or undisputed. Such of the claimed corrections as appear to require specific discussion are adverted to hereafter.

It is found, from abundant evidence, that it was a part of the general plan of development, by the Post Hill Improvement Company, of its land at Ocean Beach, that the land within the so-called "reserved

strip" was to be a restricted summer cottage colony, used for residential sites and purposes only, and not for business except with the consent of the owners of three fourths of the lots; that before and at the time the lots were sold this plan was publicly announced and it was represented that appropriate restrictions would be inserted in each deed; that plaintiffs Armstrong and Coit, who were original purchasers of lots, became such and erected cottages relying upon this general scheme and the protection of such restrictions. The restrictions above quoted were placed in the deeds in conformity with such general scheme of development and in order to protect the owners of the other lots on the reserved strip from the prohibited uses and their consequences. That the restriction against commercial use was intended to be for the benefit of the other lot owners is definitely indicated by the provision that it might be waived by consent of a certain proportion—three fourths—of such owners.

The present action and the judgment therein relate only to the land purchased by the defendant from the Fitzgerald estate, and not to the Wilkinson land, which the defendant acquired after this suit was brought.

The major claims of the appellants are that the plaintiffs did not acquire any enforcible interest in the restrictions contained in the deeds to Fitzgerald, but that these could be enforced, if at all, only by the common grantor, the Post Hill Improvement Company, that the benefit of the restrictions accrued only to the remaining land owned by the corporation, and that, by the quitclaim to Wilkinson in 1905, of the residue of the Casino lot, the company parted with its interest in the restriction and it passed to the defendant by the subsequent conveyances.

As applied to the situation delineated by the finding these claims are clearly fallacious. The facts af-

ford a complete occasion for the application of "the doctrine of negative or equitable easement whereby the grantees of a common grantor who has in deeds to successive grantees inserted restrictive covenants for the benefit of a tract divided into several parcels, may as against each other enforce by injunction the observance of the restrictions so created." *Gage* v. *Schavoir*, 100 Conn. 652, 662, 124 Atl. 535; *Mellitz* v. *Sunfield Co.*, 103 Conn. 177, 182, 129 Atl. 228, and cases cited; *De Gray* v. *Monmouth Beach Club House Co.*, 50 N. J. Eq. 329, 24 Atl. 388; *Evans* v. *Foss*, 194 Mass. 513, 80 N. E. 587; Berry on Restrictions on Use of Real Property, §315. The Post Hill Improvement Company having created such an equitable right, appurtenant to all the land in the strip conveyed by it, to have the restrictions enforced, had no power, even had it so desired, to discharge or affect the restrictions and the equitable rights of lot owners to enforce them. *Baker* v. *Lunde*, 96 Conn. 530, 538, 114 Atl. 673. The existence of a publicly announced plan of development involving restrictions upon all purchasers, in effect during all the sales by the common grantor, not only re-enforces and renders certain the applicability of the foregoing principles, but also, under the authorities above cited, disposes of the claim that the plaintiffs, being purchasers prior to the defendant and his predecessors in title, may not enforce the restrictions as against such a subsequent purchaser.

Another contention is that the Casino lot was not included in the "reserved strip," but that designation and the conceded purpose to establish a purely residential section thereon extended to the fifty cottage lots only. The evidence on this subject decisively supports the finding to the contrary and establishes that by "the reserved strip" was meant the entire tract which was reserved by the company in its deed to the

city of New London.  The incorporation in the deeds to Fitzgerald of the same restrictions which characterized the deeds of the cottage lots, the obtaining of the required consent for the use for business purposes of the northerly portion of the Casino lot by Wilkinson, the restriction of the bathhouse lots to private use, and the conduct of the Post Hill Improvement Company as to its own bathing houses, are significant in this connection.

It appears that the portion so reserved was not actually marked "reserved strip" on the map of the development first filed in the town clerk's office, but the strip was laid out on this and subsequent maps and its location and extent were unmistakably shown thereby and by the recorded deed to the city, so that the slight inaccuracy of reference in the deeds could have misled no one,—surely not the defendant who, from his own evidence, is found to have had actual knowledge of the restrictions on the Fitzgerald land.

The defendant is not aided by the fact that plaintiffs Armstrong and Coit stated on cross-examination that the defendant's building and occupancy of it did not impair their enjoyment of their property.  There are other inherent elements, aside from the matter of personal enjoyment, including the cumulative effect of progressive violations upon the utility of the restrictions and the value of the properties affected.  Proof of special damage is not necessary, and if the act of the defendant transgresses the restriction it is a violation of the rights of the plaintiffs which is not dependent upon the existence or amount of damage. Berry on Restrictions on Use of Real Property, §413; *Morrow* v. *Hasselman*, 69 N. J. Eq. 612, 61 Atl. 369; *Peck* v. *Conway*, 119 Mass. 546.  Moreover, there is no suggestion, in the answer, of reliance upon a defense that the complainants will not be damaged by

defendant's violation of the restriction, and if there were it would be incumbent upon the defendant to clearly establish that fact. *Goater* v. *Ely,* 80 N. J. Eq. 40, 82 Atl. 611; 18 Corpus Juris, p. 400: Berry on Restrictions on Use of Real Property, §413.

The defendant seeks to construe and apply the consent given to Wilkinson as extending to and authorizing the sale of merchandise along the entire length of the public entrance to the beach, which adjoins defendant's land on the east, from Bentley Avenue to the beach front. As to this, it is, at most, sufficient to note that at the time when this consent was given the tract now in question was already owned by Fitzgerald and the only land to which the consent to Wilkinson could possibly apply was the northerly part of the Casino lot as described in the deed contemporaneously given to him. Moreover, it is a fair inference from the finding that Fitzgerald and his estate observed the restrictions during all of the period, about twenty-four years, of their ownership. The descriptive reference in the written consent obviously related to the location and not to the extent of the lot.

The claim is also advanced that the restrictions in the deeds to Fitzgerald apply to places of business opening directly upon the beach only, and not to stores opening on the thoroughfare from Bentley Avenue to the beach, but we find nothing in the record to warrant such a contention.

The finding states that on some of the cottages along the reserved strip there have been displayed signs offering board and lodging; also that on one of the lots there is a sign designating a portion of the lot as an entrance to public baths which, however, are located on the opposite, northerly, side of Bentley Avenue and not on the reserved strip; the business for which Wilkinson obtained consent has been continued on

the lot deeded to him; and a portion of the Casino-lot tract has been used for private bathing houses. At the easterly end of the northerly side of Bentley Avenue, and on other streets running northerly and at right angles to Bentley Avenue, there are stores and shops, but this is not in violation of the restrictions contained in the deeds of such lots, which restrictions, as before noted, were limited to ten years. But the reserved strip still constitutes a summer residence colony and all structures thereon are used for residential or private bathing purposes, except the buildings on the land owned by the defendant, and the court finds that the original scheme of development has never been abandoned in any essential feature.

In order to work such an abandonment the conditions must have undergone such a material change as to prevent the general plan relating to the reserved strip from being carried out. The materiality of such changes is to be determined by the circumstances of each case and the test is whether they are such as to indicate an abandonment of the original general plan and make its enforcement inequitable because of the altered condition of the property under restriction. *Morrow* v. *Hasselman, supra,* p. 616; Berry on Restrictions on Use of Real Property, §§ 372, 373; 18 Corpus Juris, pp. 400-403. The finding that there has been no such abandonment in the present case is consistent with and sustained by the subordinate and operative facts. Neither can there logically be deduced any implied waiver or consent to such a departure from the original plan and purpose as is involved in the conduct of the defendant which is here complained of.

The trial court justifiably concluded that the maintenance of the place of business by the defendant on the (Fitzgerald) land described in the complaint is a violation of the plaintiffs' rights, and they are entitled

to the injunctive relief which was granted, unless, as the applicant further contends, the plaintiffs, through laches, have led the defendant into a position where it is so difficult or impossible to enjoin him without inflicting disproportionate damage and loss, that to do so would be inequitable. *Fisk* v. *Hartford,* 70 Conn. 720, 732, 40 Atl. 906; *Gage* v. *Schavoir,* 100 Conn. 652, 668, 124 Atl. 535. The record affords no persuasive basis for this claim. The situation as disclosed by the public records was clear and significant; the defendant had actual knowledge of the restrictions in the deeds to Fitzgerald; the court finds, from evidence, that while he was erecting the first structure for business purposes he was warned that its use as a store would violate the restrictions. Within two months after the erection of this first structure the present action was brought, fully apprising the defendant of the plaintiffs' claims. About a year thereafter the defendant removed the temporary building, erected the present permanent structure, and has ever since continued to do business therein. The defendant's claim of inequity because the plaintiffs did not seek a temporary injunction pending trial is without merit, especially under the circumstances just referred to. The situation squares substantially with that depicted in *Stewart* v. *Finkelstone,* 206 Mass. 28, 38, 92 N. E. 37, 28 L. R. A. (N. S.) 634: "The defendant with full knowledge of the restrictions 'deliberately attempted' to override them. . . . He took his chances as to the effect of his conduct with eyes open to the results which might ensue. . . . Entrenchment behind considerable expenditures of money cannot shield premeditated efforts to evade or circumvent legal obligations from the salutary remedies of equity."

We perceive no reason why the court should or properly could deny the plaintiffs relief because of

laches on their part or manifest inequity or hardship to the defendant.

There is no error.

In this opinion the other judges concurred.