FRANK BICKELL ET ALS. *vs.* JAMES MORAIO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 5th—decided July 18th, 1933.

*William C. Strong,* with whom, on the brief, was *William S. Hirschberg,* for the appellants (defendants).

*Joseph J. Melvin,* for the appellees (plaintiffs), with whom, on the brief, were *Frank Rich* and *George Wise,* for the appellees-defendants Moraio and Goldberg, respectively.

BANKS, J. Plaintiffs and defendants are the respective owners of certain lots in a real estate development in the town of Greenwich known as "Breezemont Park," which are subject to restrictive covenants prohibiting a business use. The plaintiffs brought this action alleging that the neighborhood had so changed that the restrictions were inequitable and unreasonable and ought to be removed. Certain of the defendants filed cross-complaints containing similar allegations. The trial court entered judgment removing the re-

strictive covenants in so far as they affect the lots of the plaintiffs and of the defendants filing cross-complaints, and quieting and settling their title as against any claim of the remaining defendants to a right to enforce the restrictions.

The following facts appear from the finding: The tract of land here in question is located on the Boston Post Road about two and one-half miles east of the center of Greenwich. In 1906 its owners caused a map of the property to be recorded upon which it was plotted into twenty-six lots known as "Breezemont Park." Two of these lots are still the property of one of the original owners. The others have been sold from time to time, the deeds containing substantially uniform covenants, expressed to be for the benefit of every portion of the tract and the purchasers of the lots in it, their heirs, successors and assigns, covenanting that the property will not be used for any other purpose than for a strictly private residence, and that only one dwelling-house shall be placed upon each lot which shall cost not less than $4000 and be located not less than fifty feet from the street.

No important changes affecting the desirability of the neighborhood for residential purposes occurred until 1912 when the Post Road was hard surfaced wide enough for two lines of traffic with a trolley track on the northern side. In 1923 the Post Road was cemented and widened to provide four lanes of traffic, and the trolley tracks were removed between 1923 and the time of the trial. Since the widening of the Post Road automobile traffic has greatly increased. It continues at all hours of the day and night, at times becomes much congested, and produces a great deal of noise particularly from trucks at night which often disturbs the sleep of occupants of the houses fronting on the Post Road. In 1926 all properties within the

development and on each side of it, back to a depth of one hundred and twenty-five feet from the Post Road, were placed in A business zone, and since the widening of the road there has been a very definite trend toward a business use of property having a frontage on the Post Road, and the finding recites a number of business places which during that time have been established along the Post Road, both east and west of Breezemont Park, such as restaurants, gasoline stations, garages and dog kennels.

The appellees own thirteen of the twenty-six lots composing Breezemont Park, and with one exception their properties front upon the Post Road, which passes through the restricted area, four of appellees' lots being north of the road and the remaining lots of the development south of it. There are nineteen dwelling-houses within this area, but no business of any kind, and no building in violation of any of the restrictive covenants. The properties adjacent to the park on all sides are used for residential purposes except that there is a garage and a waffle wagon on the property next adjoining it on the Post Road on the west, and a greenhouse on the lot next adjoining it on the east. None of the appellants' lots are upon the Post Road but face other streets and avenues within the development. The Post Road lots of the appellees if made available for business uses would be worth greatly in excess of their present values as residential property. A change from a residential to a business use of such lots would have no appreciable effect upon the value of any of the appellants' lots with the exception of one, as to which the effect would be slight. Five of the lots in this development were purchased in 1927 or subsequent thereto. With few exceptions, the several property owners within the development purchased with knowledge of the restrictions, and the

sales argument based thereon was to some extent an inducing cause of the purchase.

The finding states in considerable detail the subordinate facts upon which the trial court based its conclusion that because of the changed conditions therein recited the restrictive covenants now impose a substantial burden upon the properties of the appellees without rendering the protection to the properties of the appellants that was given when the covenants were imposed, resulting in its judgment that they should be removed. The numerous corrections of the finding which are requested are for the most part of evidential matters which if granted would not affect the result. The foregoing statement of facts, necessarily condensed from the extensive finding, fairly presents the picture portrayed by the finding, and contains the ultimate facts found by the court which are essential to a consideration of the applicable principles of law involved.

The finding discloses a typical case of the subdivision of a tract of land by the owner, and a sale of the several parcels to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement. Such restrictions constitute negative easements which may be enforced by any grantee against any other grantee, each parcel becoming both a dominant and servient tenement. *Armstrong* v. *Leverone,* 105 Conn. 464, 471, 136 Atl. 71; *Gage* v. *Schavoir,* 100 Conn. 652, 662, 124 Atl. 535. That such reciprocal rights and duties existed as between the respective purchasers of lots in this development from the time that they became the owners thereof, by virtue of which any one of them could maintain an action to restrain a breach by any other of the restrictive covenants, is not disputed—nor is it claimed that the right to enforce the restrictions has

been lost by any conduct on the part of any of the owners, by acquiescence in violations of the restrictive covenants or otherwise, which would constitute laches or an abandonment of their rights. The sole ground upon which the appellees base their claim to be relieved from the obligation of the restrictive covenants in their deeds is that the character of the neighborhood in which this development is situated has so completely changed since the restrictions were imposed that they are now burdensome upon the lots of the appellees and furnish no protection to those of the appellants, and that their further enforcement would therefore be inequitable.

The encroachment of business upon areas restricted to residential purposes has resulted in extensive litigation in which the enforcement of such restrictions has been resisted upon the ground that changed conditions have made such enforcement inequitable. Many of the cases will be found collected in comprehensive annotations in 28 L. R. A. (N. S.) 715, and 54 A. L. R. 812.

The creation, in a building development scheme, of an area restricted to residential purposes contemplates the continued existence of such an area from which business is excluded. That it also contemplates that business may extend to the confines of the area is apparent since it is to prevent the encroachment of such business into the protected area that the restrictions are created. Purchasers of lots in such an area buy in reliance upon the fact that all other lots in the area are subject to the same restrictions as those contained in their own deeds, and that the entire development will retain its character as a purely residential district. So long as it remains possible to carry out the original purpose of the development each purchaser of a lot has a right to the protection of his

easement in all the other lots in the restricted area, in the absence of conduct on his part constituting laches, waiver or abandonment. It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in the contemplation of the parties, that equity will hold the restrictions no longer enforceable.

Relief from the burden of a restrictive covenant is frequently sought upon the ground that its enforcement works a hardship upon the owner of the servient tenement and that its removal will not damage the owner of the dominant tenement. The very purpose of the restriction is to prevent the property from being devoted to a business use if it should become more valuable for such use than for residential purposes, and the fact that it would sell for more with the restriction removed would not warrant its removal. *Moore* v. *Curry,* 176 Mich. 456, 142 N.W. 839; *Ludgate* v. *Somerville,* 121 Ore. 643, 256 Pac. 1043; *Rombauer* v. *Compton Heights Christian Church,* 328 Mo. 1, 40 S.W. (2d) 545.

Nor is the right of the owner of the dominant tenement to the enforcement of the restriction dependent upon the existence or amount of damages to his property which would result from its removal. *Armstrong* v. *Leverone, supra; Morrow* v. *Hasselman,* 69 N. J. Eq. 612, 61 Atl. 369; *Peck* v. *Conway,* 119 Mass. 546.

If the plaintiffs may devote their properties to business uses it can only be on the ground that the whole purpose of the original scheme has been defeated and the preservation of the original character of the property is no longer possible. It does not appear that since the development of Breezemont Park there has

been any change in its character as a highly restricted residential area. There has been no encroachment of business within its limits, which include a substantial area, and no violation of the restrictive covenants in the deeds of the various lots. There has been no abandonment of the original plan of a restricted residential district, and it has preserved its character as such. Since the layout of the park a number of small business structures have been erected along the Post Road on either side of the restricted area of the park. It is not found, and apparently is not claimed, that this approach of business outside of the restricted area has affected its desirability for residential purposes, or materially changed its character as a residential district.

The plaintiffs case is based primarily upon the effect of the increased automobile traffic on the Post Road upon which their properties abut. The court has found that as a result of the greatly increased traffic the character of the Post Road has so changed that it renders undesirable for residential purposes plaintiffs' properties immediately fronting upon it. It has also found that their properties if made available for business uses would be worth greatly in excess of their present value, restricted as they are to residential uses. The Post Road is a main artery of travel, and it is a matter of common knowledge that the through traffic upon it, especially that of the trucks which pass through during the night, has rendered property along its entire length less desirable for residential purposes and in many instances more valuable for the kinds of business which serve such traffic, such as the garages, gasoline stations and restaurants which have grown up in the neighborhood of this development.

When Breezemont Park was laid out, the Post Road, then known as Connecticut Turnpike, ran through it

carrying such through traffic as then existed, and the additional burden of a street railway line. The latter has been removed, but the through traffic has increased as it has upon all main arteries of travel. There has been no change in the character of the road except that with the passage of the years the traffic has increased as was to be expected. The properties abutting upon the road have become less desirable for residential purposes and more valuable for business uses, but the increase in the traffic upon the Post Road has not affected such a complete change in the character of this restricted area as to defeat the objects and purposes of the restrictive covenant so that they are no longer effective. *Ludgate* v. *Somerville, supra; Allen* v. *Massachusetts Bonding & Ins. Co.*, 248 Mass. 378, 143 N.E. 499; *Vorenberg* v. *Bunnell*, 257 Mass. 399, 153 N.E. 884; *Continental Oil Co.* v. *Fennemore*, 38 Ariz. 277, 299 Pac. 132; *Evans* v. *Foss*, 194 Mass. 513, 80 N.E. 587; *Cuneo* v. *Chicago Title & Trust Co.*, 337 Ill. 589, 169 N.E. 760; *Boston-Edison Protective Assn.* v. *Goodlove*, 248 Mich. 625, 227 N.W. 772; *Rombauer* v. *Compton Heights Christian Church, supra;* cases cited in 28 L. R. A. (N.S.) 715, and 54 A. L. R. 812; Berry, Restrictions on Real Property, § 403. The conditions have not undergone "such a material change as to prevent the general plan relating to the reserved strip from being carried out." *Armstrong* v. *Leverone, supra,* p. 474.

The situation is not comparable to that present in *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311, a leading case upon which the plaintiffs rely. In that case, after the purchase of the property by the defendant, an elevated railroad was built in the street with a station whose platform occupied half the width of the sidewalk in front of the property, from which persons could look directly into the windows, and this, with the

noise of the trains, made privacy and quiet impossible. The court held that the encroachment of business in the neighborhood was anticipated when the agreement was made, but that the building of the elevated railroad and the station in front of the property was a contingency which was not within the contemplation of the parties and imposed upon them a condition frustrating the scheme and defeating the object of the covenant. The enforcement of the covenant under such conditions could not restore the neighborhood to its former condition, and would have no other result than to injure the defendant without effecting the purpose for which it was originally made.

The fact that a change in the use of the plaintiffs' properties from a residential to a business one would not materially affect the value of the properties of the defendants would not justify a removal of the restrictions, since the right to their enforcement is not dependent upon the existence of damages as a result of their removal. *Armstrong* v. *Leverone, supra.* This, of course, is upon the assumption that the beneficial value of the restrictions upon the defendants' properties has not already been destroyed by such a radical change in the character of the restricted area that they can no longer furnish the protection afforded when they were imposed. Where such is the case, with the result that the enforcement of the restrictions will be burdensome to the land to which they are attached and of no value to the dominant tenements, equity will ordinarily deny injunctive relief. Such is not the situation presented by this record. It does not appear that the essential character of Breezemont Park as a residential development has been affected by the business which has grown up along the Post Road beyond its limits, or by the increase in the traffic upon the Post Road itself. As to those defendants who bought

their lots in 1927 it does not appear that there has been any substantial changes in the character of the neighborhood since they purchased their lots in reliance upon the restrictions. Such changes as have occurred since the original layout of the development have not been such as to deprive any of the appellants of the protection of the covenants which have prevented the encroachment of business within the limits of the park. Their properties still remain desirable for residential purposes, and the protection of the restrictive covenants is as valuable to them as it was when they bought their lots in reliance upon them.

In the foregoing discussion we have followed the trial court and counsel in treating the case as presenting the broad question as to whether, because of the change in the character of the neighborhood, the enforcement of the restrictive covenants would be so inequitable that a court of equity would deny injunctive relief in their behalf. That is the question presented in cases brought by owners of dominant tenements to enjoin breaches of restrictions upon the servient tenements. This is an action, brought under General Statutes, §§ 5035 and 5334, authorizing actions to quiet title and for declaratory judgments, in which owners of the servient tenements seek to have the restrictions in the covenants in their deeds declared to be of no force or effect. If it be assumed that, upon a proper showing, relief from the binding force of such restrictions may be obtained in such an action, it is apparent that the issues are not the same as those in an action to enjoin a breach of the restrictions, and that the effect of the judgment goes beyond that in the latter form of action.

The judgment of the trial court destroys the binding force of the restrictions upon the plaintiffs' properties. In this it is more drastic than a judgment merely

denying equitable relief by way of an injunction against a breach of the covenants. The latter denies relief under the conditions existing at the time it is rendered. The court's judgment would nullify the covenants in the plaintiffs' deeds for all time, though it is quite possible that another change in the character of the neighborhood, such as might result from the building of another highway carrying the through traffic, would completely remove the ground upon which they were nullified. A change in the character of the neighborhood may be such that a court of equity will refuse an injunction and remit the plaintiffs to an action at law to recover damages for the breach of the covenant. *Jackson* v. *Stevenson,* 156 Mass. 496, 31 N.E. 691; 27 R. C. L. 774. In such an action a court of equity may rest its refusal to grant an injunction upon the ground that to do so would cause great injury to the defendant while the injury to the plaintiff from a denial of such relief would be slight. *Gage* v. *Schavoir, supra; Bauby* v. *Krasow,* 107 Conn. 109, 139 Atl. 508.

The judgment of the court appears to be predicated largely upon a consideration of the very substantial burden imposed upon the plaintiffs by a continuance of the restrictions as compared with the slight damage which would result to the defendants from their removal. A judgment in this action, decreeing that the restrictions upon plaintiffs properties are no longer of any force or effect, could be sustained, if at all, only upon a finding that the whole building scheme has become inoperative by reason of such a radical change in the character of the restricted area that its objects can no longer be carried out. The facts found by the trial court do not justify such a conclusion.

There is error, and the cause is remanded to the

Superior Court with direction to enter judgment in favor of the defendants.

In this opinion the other judges concurred.