THE FIDELITY TITLE & TRUST COMPANY, EXECUTOR
AND TRUSTEE, ET ALS. *v.* THE LOMAS AND NETTLE-
TON COMPANY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued March 9—decided April 5, 1939.

*Charles R. Covert,* with whom, on the brief, were *Edward J. Quinlan, Jr.,* and *Daniel Miller,* for the appellants (plaintiffs).

*George Dimenstein,* for the appellees (defendants Moos et als.).

*Stanley P. Mead,* for the appellee (defendant Ella C. Levis).

HINMAN, J. The complaint alleged that the plaintiffs and their predecessors in title in 1926 laid out and divided a parcel of land in Stamford into a development containing fifty-four lots, of which the plaintiffs collectively still own thirteen and one-half. The remainder were sold, prior to 1932, to the defendants or their predecessors in title, and there are six residences on six and one-half of these lots. The deeds of conveyance contained numerous restrictive covenants and agreements including a provision that the first cost of any house built upon lots fronting on Sound View Avenue should be not less than $12,500 and on any other of the lots not less than $9000, that of a one-car garage not less than $500 and of a two-car garage not less than $750. It alleged, further, that "an economic depression of national magnitude has changed the type and first cost of buildings now erected by persons of a social and financial status similar to the type of persons to whom the original developers contemplated

selling. . . . A residence costing $6000 can be built now on said lots of comparable value and quality to one costing $9000 during the period between 1926 and 1930, and a $9000-house can be built today of comparable quality and value with a house costing $12,500 built between the period from 1926 to 1930. A corresponding decrease in construction costs of garages . . . has occurred." It alleged, also, that increase in population has greatly increased the use of a public park adjoining the development, in consequence of which "said lots cannot be profitably used in a manner similar to that contemplated by the original developers in the scheme of restrictions and agreements as the same applies to the first cost of any dwelling house and garage." The relief specifically prayed for was "a declaratory judgment decreeing a modification of the building restrictions to permit of the erection of a house and garage on lots owned by the plaintiffs of a first cost of not less than $6300 as to interior lots . . . and . . . on lots fronting on Sound View Avenue of a first cost of not less than $9400." Certain of the defendants demurred to the complaint and prayers for relief on grounds hereinafter stated, and error is assigned in sustaining these demurrers.

One of the grounds of demurrer is that the power of the court is limited to enforcing or refusing to enforce the restrictions and does not extend to modifying the terms thereof. It is sufficient for present purposes to assume, as we did in an action for a declaratory judgment abrogating building restrictions upon lots in a development, *Bickell* v. *Moraio,* 117 Conn. 176, 186, 167 Atl. 722, that, upon a proper complaint and a sufficient showing, a court might so modify restrictions as to permit construction of buildings costing less than the amount specified.

The main ground of demurrer contested on this ap-

peal is, briefly stated, that it does not appear that the changes in economic conditions and in building costs and other attendant circumstances alleged in the complaint and principally relied upon are so permanent as to existence, duration or extent as to justify the modification which is sought. Purchasers of lots in a real-estate development are entitled to rely upon the assurance afforded by restrictions applying to each that the entire area will retain the character which it is the office of the restrictions to secure. "So long as it remains possible to carry out the original purpose of the development each purchaser of a lot has a right to the protection of his easement in all the other lots in the restricted area, in the absence of conduct on his part constituting laches, waiver or abandonment. It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in contemplation of the parties, that equity will hold the restrictions no longer enforceable." *Bickell* v. *Moraio,* supra, 181; *Armstrong* v. *Leverone,* 105 Conn. 464, 474, 136 Atl. 71. In an action for removal or relaxation of restrictions the issues are not the same as in one seeking to enforce them by enjoining breach thereof, and the judgment is more drastic. Injunction may be denied because of conditions existing at the time, while as to a judgment which affects the covenants for all time it is to be considered that it is quite possible that another change may occur subsequently which would remove or materially affect the ground upon which the judgment was based. *Bickell* v. *Moraio,* supra, 186. It should be granted with caution and only when the motivating considerations are not only ample but so

settled and lasting that it is manifest that the purpose of the original restriction has been permanently frustrated. The change must be "so great as clearly to neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant." *Humphreys* v. *Ibach,* 110 N. J. Eq. 647, 653, 140 Atl. 531, 85 A. L. R. 980.

Most of the cases in which general relief from restrictive covenants has been obtained involve situations where, since the time when the restrictions were established, there has been such a radical and permanent change in use or occupancy of premises in the neighborhood—as from residential to business purposes—as to defeat the objects sought to be achieved by the restriction. See, for example, *McArthur* v. *Hood Rubber Co.,* 221 Mass. 372, 109 N. E. 162; *Osius* v. *Barton,* 109 Fla. 556, 147 So. 862, 88 A. L. R. 394; *Gilmore* v. *Keogh,* 241 Ill. App. 28. In *Bickell* v. *Moraio,* supra, removal of restrictions to residence purposes was sought on the ground that the use and availability of the neighborhood had so changed, largely because of developments in traffic conditions, that the restrictions were inequitable and unreasonable. Judgment for the plaintiffs was reversed on appeal, this court saying (p. 187) that it "could be sustained, if at all, only upon a finding that the whole building scheme has become inoperative by reason of such a radical change in the character of the restricted area that its objects can no longer be carried out," a conclusion which the facts were held not to justify. "The court's judgment would nullify the covenants . . . for all time, though it is quite possible that another change in the character of the neighborhood, such as might result from the building of another highway carrying the through traffic, would completely remove the ground upon which they were nullified."

*Page* v. *Murray,* 46 N. J. Eq. 325, 19 Atl. 11, upon which the plaintiffs lean heavily, was an action to restrain violation of a covenant against the erection of any building costing less than $3000 for twenty years from the date of the deed. It appeared that the houses which had been built in the vicinity cost less than that sum, the majority less than $2500, while, after seventeen years had elapsed, no buildings of the specified cost had been built on the land and "it appears to be too late for the covenant to secure the desired end," also that the complainant had evinced a disposition not to himself observe the spirit and intent of the covenant. In view of these facts it was held that assistance in enforcement of this covenant should be withheld. In addition to the factual distinctions between that case and the instant case there is also the difference, already noted, between "refusing to enforce a contract in an inequitable manner," as there, and "making a new contract for the parties." *Humphreys* v. *Ibach,* supra, 652. In *Trustees of Columbia College* v. *Thacher* (1882) 87 N. Y. 311, it was held that the result of the change worked by the location of an elevated railroad and station in front of the property was to defeat the plan and purpose of the original covenantors and specific performance by a subsequent purchaser was not compelled. It was observed (p. 320) that the causes were not "transient." This case, too, was an action to enforce by injunction, not to abrogate, covenants restricting buildings to dwelling houses. See also *McClure* v. *Leaycraft,* 183 N. Y. 36, 75 N. E. 961.

The gist of the factual allegations of the complaint is that economic changes have so reduced the first costs of building that houses and garages of comparable value and quality can now be built for about two-thirds of the amount they would have cost at the time

the restrictions were imposed. The further allegation that these changes have destroyed the objects of the development is palpably a conclusion from the subordinate facts and dependent upon their sufficiency. *Bradley* v. *Clarke,* 118 Conn. 641, 644, 174 Atl. 72. The purpose of prescribing minimum building costs was to set a certain standard of quality for the development, and is the usual and practical method of attaining that object, notwithstanding the frequent fluctuations which characterize such costs. Although the depreciation relied upon may be unusual in extent and duration, there is and cannot be assurance of permanence or against the recurrence of conditions which would again render the standard approximately as appropriate as when it was first set up and present economic conditions cannot be truly regarded as having destroyed the objects of the development or so permanently impaired them as to warrant, in accordance with the principles above expounded, the modification prayed for. The like is patently true as to the present use of the adjoining park. The reservation in the deeds that the grantor may impose other restrictions "not in substitution of or of lesser force and effect" than those therein specified affords no justification for the modification now sought. There was no error in sustaining the demurrer on the ground last discussed.

The distinctions above adverted to between actions such as the present one and those seeking enforcement by injunction of restrictive covenants suggests that, in a case of the latter kind, if it be shown that a projected building, although costing less than the prescribed amount, is equivalent in quality to one which would have cost that amount at the time the restriction was imposed, equity might afford relief by

declining to enforce the letter of the covenant.  *Bickell*
v. *Moraio,* supra, 186; 27 R. C. L. 773.

There is no error.

In this opinion the other judges concurred.