THOMAS P. HACKETT, et al.,

*vs.*

D. P. STEELE, et al.

(*Knoxville,* September Term, 1956)

Opinion filed December 7, 1956.

MOON, ANDERSON, HARRIS & DINEEN, Chattanooga, for complainants.

ROBERTS & WEILL, Chattanooga, for defendants.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The original bill in this case was filed by the owners of certain lots in a residential subdivision restricted to residences for the purpose of having these restrictions cancelled on the basis that there had been such a radical change in conditions as to make the enforcement of said restrictions inequitable against the owners of the lots to be hereinafter described more in detail.

There was a demurrer on behalf of the defendants who are owners of other lots in the subdivision, which demurrer was sustained by the Chancellor and the complainants have appealed.

The substance of the allegations of the original bill which are material to a disposition of this appeal is as follows: The bill alleges that in 1922 one of the defendants, Mark K. Wilson, purchased an unimproved tract of land consisting of 130 acres located in Hamilton County, outside the City of Chattanooga, and east of Missionary Ridge on what was then Bird's Mill Road, the tract fronting on the south line of said road about 1,700 feet and extending southwardly a distance of approximately three-fourths of a mile. Shortly after the pur-

chase of said tract the defendant Wilson had it subdivided, streets platted and the land divided into blocks which were in turn, divided into about 500 lots. Blocks 1, 2, 3 and 4 are the ones involved in this controversy and they are the ones which front on said former Bird's Mill Road which has since become Brainerd Road. Said blocks extend southwardly about 400 feet to the north line of what is now Sunbeam Avenue which runs south of and parallel to Brainerd Road; they are bounded on the west by the present South Moore Road and on the east by the present McBrien Road except for a lot running about 130 feet on the Brainerd Road at the southwest corner where it intersects with McBrien Road but said lot is not included in this subdivision.

Through the lapse of time from 1922 until 1954, when this bill was filed, McCallie Avenue, which at that time extended only to the city limits of Chattanooga, which were at the tunnel under Missionary Ridge, has changed from a residential neighborhood to commercial and is a part of U. S. Highway No. 11, which runs east from McCallie Avenue out Brainerd Road; this latter has been widened into a four-lane highway, is heavily traveled and now built up with various sorts of business establishments on out to where said subdivision is located and the same is now within the city limits of Chattanooga. Both the north and south sides of said Brainerd Road have been zoned "commercial" from the tunnel eastwardly to the city limits except for one small area not here concerned.

On the north side of Brainerd Road opposite said Blocks 1, 2, 3 and 4 herein involved, there are a church, antique shop, sales agency, real estate agency, doctor, restaurant, several filling stations, a monument com-

pany, pharmacy, beauty shop, dressmaker, barber shop, radio shop, hardware store, dry cleaners, etc.

On the south side of said road there is a filling station at the southwest corner of Brainerd Road and South Moore Road and one at the southeast corner of Brainerd and McBrien Road, although neither one has ever been a part of the subdivision property. Fronting on Brainerd Road there are in Block 1, three dwellings erected in 1920 and one dwelling in Block 2, erected in 1920, while the remainder of the lots in Blocks 1 to 4 on Brainerd Road are unimproved and have remained vacant, although surrounded by business establishments.

The bill sets out the restrictions but the only ones material at the moment are as follows:

"(1) That within a period of 50 years from this date no building other than a dwelling or building ordinarily appertaining to dwelling houses shall be erected, maintained or used by the grantees, their heirs or assigns or anyone deriving title or rights from or through them on the premises herein conveyed."

The deed then provides that in case of violation of the above restrictions, "the grantees, their heirs or assigns shall be subject at the suit of the grantor, its successors or assigns, or by the public authorities to be enjoined," etc.

Again:

"The entire contract between the parties is stated in this deed and the question of further development either of the property herein conveyed or the properties of the grantor or of other public improvements is no part of the consideration, to all of which the purchaser agrees."

Also:

"Any contract or deed with any other purchaser or purchasers of any real estate in said subdivision has no reference to this deed, nor is the same any part of the consideration of this deed, to all of which the purchasers or grantees herein agree."

The bill then avers as follows:

"*Compellants* aver that there has been a fundamental change in the physical condition of the property along the Brainerd Road in the vicinity of Blocks 1 to 4, due to a municipal expansion and the spread of·the commercial district of Chattanooga to the east, and that said restrictions have been rendered obsolete and out-dated by the passage of time, that the lots are no longer suitable for residential uses and, therefore, the purpose for which the restrictions were imposed can no longer be accomplished. All of the lots in said blocks fronting on the Brainerd Road except four, have remained unimproved during the thirty-year interval since the property was subdivided, and due to the restrictions are not worth as much now as they were when purchased, and if the restrictions remain the lots will further diminish in value.

"The owners have been paying taxes on the lots all these years, and notwithstanding the great increase in value of other lots located in this vicinity on both sides of the road, complainants' lots are for all practical purposes worthless.

"Complainants further aver that due to the changed conditions above described, restricting these lots to residential purposes has become detrimental rather than beneficial to the property and the enforcement of the restriction will not restore to the neighborhood a

residential character, but will lessen the value of the lots and will harass and injure the owners without effecting the purpose for which the restrictions were originally imposed. The owners of lots in other sections of the subdivision will not be adversely effected (sic) by removal of these restrictions and the parties to the bill are the only ones who can immediately be concerned with this litigation.

"Complainants therefore allege that the restrictions should be removed (1) because the two provisions in the deed quoted above show that they were incorporated in the deeds for the benefit of the grantor alone and not for the benefit of the purchasers of other lots in the subdivision, each deed being a separate and distinct contract for the grantor, unenforceable by anyone but the grantor, and he having parted with his interest through his trustee, cannot enforce them.

"(2) Because due to the change of conditions the restrictions have been rendered obsolete and confiscatory."

To this bill the defendants demurred as follows:

"(1) The averments of the bill, that because of the fact that real estate therein described is restricted by a deed to be used for a residence alone and that such restriction depresses the value of the lots in the common tract averred to be owned by complainants, furnishes no ground either at law nor equity for the cancellation of said restriction on the part of the property owned by complainants.

"(2) The facts averred in the bill and shown by the exhibits thereto do not support but instead negative the pleaders' conclusion that the restriction was for

the benefit of the grantors alone. The allegations show that such restriction was for the benefit of all the present owners of lots in the described subdivision and that the restriction was fully enforcible by anyone of the above said owners."

The Chancellor sustained both grounds of the demurrer and the only two assignments of error on appeal are that he was in error in both respects.

We are of opinion that the case of *Ridley v. Haiman*, 164 Tenn. 239, 47 S.W.2d 750, fully sustains the Chancellor's action in sustaining the second ground of the demurrer. The bill shows that the deed to each and every grantee contains these restrictions to use as residential property of a specified type and value of structure and the language quoted shows that each grantor was expressly empowered to file suit to enjoin a breach of the restricted covenants. That assignment is, therefore overruled.

The other assignment requires a bit more discussion. In our judgment the case of *Ridley v. Haiman, supra,* is not determinative. That case, 164 Tenn. on page 258, 47 S.W.2d on page 756, simply has this to say:

"[10] We think there has been no such growth of the city and encroachment of business in the neighborhood of these lots as would render the enforcement of these restrictions inequitable. The record does show that there is or was a miniature golf course across the street, not a part of this property. The nearest business place of any other nature is two thousand feet away, over a hill. The neighborhood is exclusively residential, with these exceptions, all good homes, some very fine homes."

Both parties cite and rely upon the copious note to be

found in 4 A.L.R.2d, beginning on page 1111. Without attempting to quote from said annotation too much in detail, we first call attention to the fact that a difference is pointed out between the situation where an *injunction* is sought to enjoin the violation of the restrictive covenant on the one hand, and on the other hand where there is a proceeding in equity for the purpose of *cancelling* the restrictions completely. The difference is, of course, that once the restrictions are done away with all litigation in regard thereto is forever after foreclosed.

With a view to determining whether or not the bill was demurrable we call attention to the statement beginning at the bottom of the page 1114, which is as follows:

"But despite the tendency of some American Courts to adopt a doctrine of comparative benefits, and while a radical change in conditions and in the neighborhood surrounding restricted property will deter practically all American Courts from granting injunctive relief, an analysis of the cases as a whole discloses that equity will enforce restrictive covenants imposed for the benefit of the complainant's property, if they remain of substantial value, notwithstanding the resulting hardship to the servient estate, where the complainant comes into Court with clean hands and guiltless of laches, waiver or estoppel."

Again, at the bottom of page 1116, it said:

"To sum up, Courts of Equity, in passing upon cases of this character, grant or withhold injunctive relief depending upon the accomplishment of an equitable result in the light of all the circumstances surrounding the particular case and grant or withhold affirmative relief depending upon whether the restrictive covenant remains of substantial benefit to the domi-

nant estate or whether its purpose has been defeated by a radical change in the character of the neighborhood.''

Then on page 1171, under subhead ''d'' changes where outside restricted tract, section 22, of the annotation are cited several cases where it was held that the changes shown by the evidence occurring outside the restricted area were not sufficient to justify affirmative relief by way of cancellation of the restrictions.

While we realize that these cases were not disposed of on demurrer but upon answer and proof, nevertheless they state the true principle upon which relief is to be granted or denied.

The case more nearly analogous on the facts to the instant case is *Bickell v. Moraio,* 1933, 117 Conn. 176, 167 A. 722. In that case the Boston Post Road was gradually widened and became an arterial highway to such extent that the noise of the traffic was very intense; also all types of highway business developed on each side of the road except within the subdivision; some of the lots of the subdivision were on each side of the road, but there were other lots back away from the road which were not affected by the change in conditions. It was alleged and shown that the lots along the road if made available for business would be greatly in excess of their present value as residential property. In denying the relief by cancellation sought by the owners of several lots fronting along the Boston Post Road, 167A, on page 724, the Court said:

''The creation, in a building development scheme, of an area restricted to residential purposes, contemplates the continued existence of such an area from which business is excluded. That it also contemplates

that business may extend to the confines of the area is apparent, since it is to prevent the encroachment of such business into the protected area that the restrictions are created. Purchasers of lots in such an area buy in reliance upon the fact that all other lots in the area are subject to the same restrictions as those contained in their own deeds, and that the entire development will retain its character as a purely residential district. So long as it remains possible to carry out the original purpose of the development, each purchaser of a lot has a right to the protection of his easement in all the other lots in the restricted area, in the absence of conduct on his part constituting laches, waiver, or abandonment. It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in the contemplation of the parties, that equity will hold the restrictions no longer enforceable.

"Relief from the burden of a restrictive covenant is frequently sought upon the ground that its enforcement works a hardship upon the owner of the servient tenement and that its removal *will not damage the owner of the dominant tenement.* The very purpose of the restriction is to prevent the property from being devoted to a business use if it should become more valuable for such use than for residential purposes, and the fact that it would sell for more with the restriction removed would not warrant its removal. *Moore v. Curry,* 176 Mich. 456, 142 N.W. 839; *Ludgate v. Somerville,* 121 Or. 643, 256 P. 1043, 54 A.L.R. 837;

*Rombauer v. Compton Heights Church*, 328 Mo. 1, 40 S.W.2d 545.

"Nor is the right of the owner of the dominant tenement to the enforcement of the restriction dependent upon the existence or amount of damages to his property which would result from its removal. *Armstrong v. Leverone* [105 Conn. 464, 471, 136 A. 71]; *Morrow v. Hasselman*, 69 N.J.Eq. 612, 61 A. 369; *Peck v. Conway*, 119 Mass. 546.

"If the plaintiffs may devote their properties to business uses, it can only be on the ground that the whole purpose of the original scheme has been defeated and the preservation of the original character of the property is no longer possible. It does not appear that, since the development of Breezemont Park, there has been any change in its character as a highly restricted residential area. There has been no encroachment of business within its limits, which include a substantial area, and no violation of the restrictive covenants in the deeds of the various lots. There has been no abandonment of the original plan of a restricted residential district, and it has preserved its character as such. Since the layout of the park a number of small business structures have been erected along the post road on either side of the restricted area of the park. It is not found, and apparently is not claimed, that this approach of business outside of the restricted area has affected its desirability for residential purposes, or materially changed its character as a residential district.

"The plaintiff's case is based primarily upon the effect of the increased automobile traffic on the post road upon which their properties abut. The court has

found that as a result of the greatly increased traffic the character of the post road has so changed that it renders undesirable for residential purposes plaintiff's properties immediately fronting upon it. It has also found that their properties, if made available for business uses, would be worth greatly in excess of their present value, restricted as they are to residential uses. * * * The properties abutting upon the road have become less desirable for residential purposes and more valuable for business uses, but the increase in the traffic upon the post road has not affected such a complete change in the character of this restricted area as to defeat the objects and purposes of the restrictive covenant so that they are no longer effective * * *." (The Court then cites a large number of cases.)

Referring again to page 1171 of said A.L.R. annotation, there are cited: *Storthz v. Middleland Hills Co.*, 1936, 192 Ark. 273, 90 S.W.2d 772; *Humphreys v. Ibach*, 1932, 110 N.J.Eq. 647, 160 A. 531, 85 A.L.R. 980; *Brenizer v. Stephens*, 1941, 220 N.C. 395, 17 S.E.2d 471; *Booker v. Old Dominion Land Co.*, 1948, 188 Va. 143, 49 S.E.2d 314.

These cases announce the same principle but are not nearly so analogous on the facts as the Connecticut case, *supra*.

Counsel criticizes the above North Carolina decision by referring to a later case, *Shuford v. Asheville Oil Co.*, 243 N.C. 636, 91 N.E.2d 903, where the evidence was held sufficient to sustain the judgment denying enforcement of the restrictions. Only a slight examination of that case will disclose an entirely different set of facts from that involved in the Connecticut case or in the instant case.

■■■■■■  ■■■■

■ Now referring again to the allegations of the bill, appellant nowhere alleges there has been such a radical change in the neighborhood that the purposes of the restrictive covenants relating to the entire subdivision have become burdensome and are not being maintained for the benefit of the owners of the lots. The bill simply avers that there has been a radical change in Brainerd Road both with respect to the amount of business buildings on it as well as the fact that it has been re-zoned "commercial" on both sides of the street including these four blocks; that the lots will be worth more for commercial than they are for residential; but the only averment with reference to the remainder of the other 500 lots is that the owners of those lots will not be adversely affected by the removal of the restrictions.

In our judgment, therefore, the bill fails to state a cause of action within the principles above quoted. Therefore, the demurrer was properly sustained on both grounds. Let the decree be affirmed.