**Noble C. CAUDILL, II, et al., Complainants-Appellees,**

v.

**Nathan B. HAMLET et al., Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section.*

July 28, 1972.

Certiorari Denied by Supreme Court
Dec. 4, 1972.

K. Harlan Dodson, Jr., Harlan Dodson, III, Hooker, Keeble, Dodson & Harris, Nashville, for complainants-appellees.

C. H. Rutherford, Jr., Rutherford, Crockett & Guenther, Larry L. Roberts, Christian, Urrutia & Roberts, Philip M. Carden, Nashville, for defendants-appellants.

OPINION

SHRIVER, Judge.

This is an appeal by defendants from a decree of the Chancery Court, Part I, at Nashville, cancelling restrictive covenants on nine lots of an eighty-one lot residential subdivision.

The case was heard by the Chancellor on oral and documentary evidence and resulted in the following decree:

"This cause came on to be further heard before the Honorable Ned Lentz,

---

* No Petition for Certiorari was filed in the Supreme Court; however, the Presiding Judge and a committee of members of the Court of Appeals determined that this opinion should be published.

Chancellor, upon this and former days of the term, upon the pleadings, the testimony of witnesses, stipulations, argument of counsel, and the entire record.

From all of which the Court finds from the proof that the neighborhood surrounding the lots in Echo Meadows Subdivision belonging to the complainants has been subjected to a radical change since the restrictions on Echo Meadows Subdivision were adopted in that the entire neighborhood has now become devoted to industrial and commercial uses and that there is an actual invasion of the said subdivision as a result of light, traffic, noise and the like, so that the Court finds that the property of the complainants has become valueless for residential purposes and has value only for commercial purposes.

IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED by the Court:

1. That the restrictions of record in Book 2447, page 325, affecting Echo Meadows Subdivision, a plan of which is of record in Book 2331, page 64, Register's Office of Davidson County, Tennessee, insofar as the same apply to Lots 1, 43, 44, 45, 46, 47, 48, 80 and 81, be and they are hereby removed so that the said property may be used for such purposes as is permitted by the zoning authorities.

2. The costs of this cause are taxed to the complainants, for whose benefit the said suit was brought and for which execution may issue if necessary.

To the foregoing action of the Court the defendants except and pray an appeal to the Court of Appeals for the Middle District of Tennessee at Nashville, which the Court is pleased to allow upon the defendants execution of a bond conditioned as required by law within thirty days, and the defendants are allowed ninety days within which to prepare and file their bill of exceptions.

/s/ Ned Lentz
Chancellor

APPROVED FOR ENTRY:

/s/ K. Harlan Dodson
Solicitor for Complainants

Solicitor for Defendants"

The original bill was filed on December 22, 1970 and recites that complainant, Noble C. Caudill, II, is the beneficial owner of Lots 43, 44, 45, 46, 47 and 48 in the Subdivision of Echo Meadows in the 10th Civil District of Davidson County, Tennessee, a plat of which is on record in Book 2331, Page 64, Register's Office of said County; that complainant, Thomas F. Disken, is the owner of Lot No. 1 in said subdivision; that complainant, Frank Tinnon, is the owner of Lot No. 80 in said subdivision; and that complainant, Joe C. Taylor, is the owner of Lot No. 81 in said subdivision, and all of said lots front on Two Mile Pike.

It is recited that the defendants own the lots immediately adjacent to the properties of the complainants in said subdivision, setting forth the number of said lots, and that, since the properties of the named defendants are contiguous to the properties owned by complainants, said defendants would be the most likely ones to be affected by this suit and, accordingly, are sued not only in their individual capacities but also as representatives of the entire class of landowners owning property in said Subdivision known as Echo Meadows; that it would be expensive and burdensome to name as defendants all of the owners of lots in said subdivision who might in some way be affected by the removal of the restrictions on complainants' lots.

It is further recited that when Echo Meadows Subdivision was placed on record, certain restrictive covenants were filed of record in Book 2447, Page 325, Register's Office of Davidson County, Tennessee, and that said restrictions provide that no business house of any kind shall be erected or maintained on said premises but that same shall be occupied for residential purposes only. Said restrictions, (a copy of which is made Exhibit

"A" to the bill) extend through the year 1975.

It is further averred that the restrictions are no longer proper for the properties fronting along Two Mile Pike and should no longer be applicable and enforceable as respects those lots because of changed conditions and circumstances enumerated as follows:

(A) That the entire subdivision has now become surrounded by commercial or industrial properties.

(B) That properties to the south of the subdivision along Two Mile Pike are zoned commercial to a depth of 300 feet from Gallatin Road; the property to the west of the subdivision and contiguous to it is zoned industrial; the property to the north and northwest is zoned commercial and dedicated to commercial usage, except a portion that is presently devoted to industrial use; the property directly across Two Mile Pike from the subdivision, constituting some fifty acres or more, has been zoned commercial and is being improved as a large shopping center.

(C) Two Mile Pike from Interstate Access No. 22 off I–65 easterly to Gallatin Road constitutes a primary access point for traffic going to Hendersonville, Saundersville and Gallatin from Nashville, and has a high concentration of traffic with incident noise, congestion, etc.

(D) The property is subject to a Tennessee Valley Authority easement with large power lines covering a portion of the property in the Subdivision.

The bill proceeds:

"Accordingly, your complainants aver that the changed conditions due to internal improvements and the character and usage of the neighborhood render their properties fronting along Two Mile Pike undesirable and, in fact, almost valueless for residential purposes and as a result it is not economically feasible to keep the properties properly improved and in good repair to the end that the same will blight the entire area, both for residential and other purposes in the event the restrictions are permitted to remain in effect on these properties for the remainder of their term."

It is further averred that the properties fronting along Two Mile Pike could be used for commercial purposes without adversely affecting the other properties in the subdivision.

The bill prays:

(1) For process.

(2) That the suit be permitted to be maintained as a class action.

(3) That at the hearing the Court decree that the said restrictions as respects the complainants' properties are no longer proper and constitute an inequitable restriction upon the complainants' ownership of their land and should be removed with appropriate restrictions as decreed by the Court to avoid any adverse effect to the remaining properties in the Echo Meadows Subdivision.

(4) For general relief.

The answer of the defendants denies that the changed circumstances and conditions itemized as (A), (B), (C) and (D) in the bill have any applicability to the subdivision in which these defendants live and have their homes because the recorded restrictions of the subdivision have been observed within the subdivision and no new construction for commercial purposes has taken place within the subdivision. They therefore aver that there is no such change in the subdivision as would permit a violation of the restrictions or a termination thereof by the Court.

Defendants also positively deny that the use of complainants' property for commercial purposes would not adversely affect the subdivision or the property of the defendants, and allege that they are entitled to rely on their rights in and to the recorded restrictions until same are terminated in 1975.

The record shows a Motion by ten persons who describe themselves as property owners in the Echo Meadows Subdivision, seeking to have the original bill dismissed on the ground that they, along with numerous other citizens, residents and property owners in said subdivision have an interest in the outcome of the litigation but have not been made parties thereto, and they deny that the class sought to be represented by the named defendants is so numerous that joinder of all of the members is impractical.

Said motion was overruled and disallowed.

Still another Motion to Intervene on behalf of certain owners of a tract adjacent to but not a part of the subdivision was likewise overruled.

In the order overruling the motion, it was recited:

" . . . the Court announced that these parties making the motion and others of similar status in Echo Meadows Subdivision were properly before the Court on the Court's own motion and that all residents of similar status would be given an opportunity to appear before the Court and defend this action at the hearing of the cause on November 26, 1971. The Court accordingly felt that the motion was not well taken and should be overruled."

## ASSIGNMENTS OF ERROR

There are ten assignments which it will not be necessary to set out seriatim.

Assignments Nos. 1 and 2 complain of the failure of the Chancellor to sustain the motion to dismiss filed by parties who were not named defendants but who were owners of lots in the Echo Meadows Subdivision.

Assignment No. 3 charges error in allowing owners of acreage adjoining the Subdivision to participate in the trial without the entry of appropriate orders.

Assignment No. 4 charges error in taking judicial notice of alleged facts known to the Chancellor in his personal capacity and not introduced in proof.

Assignment No. 5 asserts error in finding that the neighborhood surrounding the lots belonging to complainants has been subjected to radical change since the restrictions were adopted; and Assignment No. 6 assigns as error the finding that "the entire neighborhood has now become devoted to industrial and commercial uses"; and Assignment No. 7 asserts error in finding "that there is an actual invasion of the said subdivision as a result of light, traffic, noise and the like; and Assignment No. 8 charges error in finding "that the property of the complainants has become valueless for residential purposes and has value only for commercial purposes."

Assignment No. 9 asserts:

"The learned Chancellor erred in ordering that the restrictive covenants be removed from the complainants' lots."

Assignment No. 10 charges error in failing to limit the relief granted to that prayed in the original bill.

## OUR CONCLUSIONS

In our view of the case, Assignment No. 9, which charges error in ordering the restrictive covenants removed from the complainants' lots, presents the determinative question in this suit, and, since it is our view that the learned Chancellor was in error in decreeing a removal of the restrictive covenants from the nine lots owned by the complainants, a discussion of and a determination respecting this question will render it unnecessary for us to discuss the other assignments.

The essential facts involved in the case at bar are not in dispute.

The principal complainant, Noble C. Caudill, II, a real estate dealer, also owns other property interests in the area of this subdivision. He became interested in cer-

tain lots in Echo Meadows Subdivision when the Rivergate Shopping Center Development began, at which time he obtained options on some of these lots facing that development across Two Mile Pike. Mr. Caudill was, of course, on notice that the restrictive covenants in question were of record and in force on all of the lots in said subdivision.

The widening of Two Mile Pike, the removal of a line of trees in front of the houses facing that Pike, the development of the Shopping Center across the road, with resulting increased traffic, and installation of bright lights are all facts which are not in dispute.

There was opinion evidence by witnesses on behalf of complainants to the effect that properties in the subdivision would be enhanced in value by commercial development of the lots owned by complainants. On the other hand, defendants presented expert witnesses to show that the removal of restrictions on the lots facing Two Mile Pike would adversely affect the value of other property in the subdivision and that it would be to the best interests of the owners in said subdivision to continue the restrictions.

Some of the resident owners of lots deeper in the subdivision testified that they would not have purchased their houses without the restrictive covenants and that they have continued to improve their homes and object to the removal of the restrictions on the lots along Two Mile Pike.

From the record it appears that this subdivision of eighty-one lots constitutes a comparatively large residential area and that no relaxing of the covenants requiring the building of residences only has occurred. In other words, there has been no invasion of property in the subdivision by conversion to commercial purposes. The only invasion shown in the evidence is that of light from the shopping center across the way and noise from traffic on Two Mile Pike.

The single question for determination is whether complainants are entitled to have the restrictive covenants removed on their lots described in the bill over the objection of other residents in the subdivision who have their homes there and who bought them in reliance on the restrictive covenants and who insist on compliance therewith.

In the case of Ridley v. Haiman, 164 Tenn. 239, 47 S.W.2d 750, in an Opinion by Mr. Chief Justice Green, certain rules are announced and distinctions made with respect to the rights of property owners in a subdivision with restrictive covenants on the land relative to enforcement of the restrictions by injunction as opposed to the right of an individual owner to have the restrictive covenants removed.

In said case the Court specifically held, as is set out in the headnotes which accurately reflect the Court's decision, that:

"Where at the subdivision of a tract of land restrictions in the deeds were made for the benefit of all purchasers and available to all of them, such restrictions cannot be released without the assent of the purchasers or grantees for whose benefit they were imposed."

It was also held:

"Where one claiming under a deed which contained restrictive covenants filed a suit in Chancery to clear up the title because the record title was not in such person, and the decree in the suit adjudged the complainant to have an absolute title, such decree was not res adjudicata as to persons not parties to the suit, claiming the benefit of the restrictive covenants contained in the deed under which title was asserted."

"Where the owner of a tract of land subdivides it and sells the different lots to separate grantees, and puts in each deed restrictions upon the use of the lots conveyed in accordance with a general building, improvement or development

plan, such restrictions may be enforced by any grantee against any other grantee."

Perhaps the leading case in Tennessee dealing with the question for determination here is Hackett v. Steele, 201 Tenn. 120, 297 S.W.2d 63, where, in an Opinion by the late Mr. Justice Swepston, an exhaustive review of cases dealing with this subject is set forth.

In *Hackett, supra,* the original bill was filed by owners of certain lots in a residential subdivision to have the restrictions cancelled on the basis that there had been such a radical change in conditions and surroundings as to make the enforcement of said restrictions inequitable against the complainants as owners of certain lots.

It is shown that through the lapse of time from 1922 to 1954 when the bill was filed, vast changes had taken place in the area around this subdivision, it being shown that north of the lots of complainants there were various shops, restaurants, filling stations and stores, and on the south and southwest filling stations, stores, beauty shops, barber shops, dry cleaners, etc.

The restrictions in question provided that, "For a period of 50 years from this date no building other than a dwelling or building ordinarily appertaining to dwelling houses shall be erected. . . ."

The bill in *Hackett, supra,* averred that, due to changed conditions described in the bill, the restrictions had become detrimental rather than beneficial to the property and the restrictions would not restore to the neighborhood a residential character but would lessen the value of the lots and injure the owners without effecting the purpose for which the restrictions were imposed, and that the owners of the lots in other sections of the subdivision would not be adversely affected by removal of the restrictions.

The Chancellor sustained a demurrer to the bill and the Supreme Court, in affirm-

ing the decree of the Chancellor, discussed numerous cases. The opinion quotes with approval from 4 A.L.R.2d, beginning on page 1114, as follows:

"But despite the tendency of some American Courts to adopt a doctrine of comparative benefits, and while a radical change in conditions and in the neighborhood surrounding restricted property will deter practically all American Courts from granting injunctive relief, an analysis of the cases as a whole discloses that equity will enforce restrictive covenants imposed for the benefit of the complainant's property, if they remain of substantial value, notwithstanding the resulting hardship to the servient estate, where the complainant comes into Court with clean hands and is guiltless of laches, waiver or estoppel."

The Opinion continues (p. 128, 297 S.W.2d p. 66), as follows:

"Then on page 1171, under subhead 'd' changes, where outside restricted tract, section 22, of the annotation are cited several cases where it was held that the changes shown by the evidence occurring outside the restricted area were not sufficient to justify affirmative relief by way of cancellation of the restrictions.

While we realize that these cases were not disposed of on demurrer but upon answer and proof, nevertheless, they state the true principle upon which relief is to be granted or denied."

In the Opinion it is stated that the case more nearly analogous on the facts to the instant case is Bickell v. Moraio, 117 Conn. 176, 167 A. 722, wherein the Boston Post Road was widened to become an arterial highway so that the noise of the traffic was very intense and all types of highway business developed on each side of the road, except within the subdivision. It was alleged and shown that the lots along the road, if made available for business, would be greatly in excess of their present value as residential property. In denying relief

by cancellation sought by the owners of several lots fronting along the Boston Post Road, the Court said:

"The creation, in a building development scheme, of an area restricted to residential purposes, contemplates the continued existence of such an area from which business is excluded. That it also contemplates that business may extend to the confines of the area is apparent, since it is to prevent the encroachment of such business into the protected area that the restrictions are created. Purchasers of lots in such an area may buy in reliance upon the fact that all other lots in such an area are subject to the same restrictions as those contained in their own deeds, and that the entire development will retain its character as a purely residential district. So long as it remains possible to carry out the original purpose of the development, each purchaser of a lot has a right to the protection of his easement in all the other lots in the restricted area, in the absence of conduct on his part constituting laches, waiver, or abandonment.

· · ·

Relief from the burden of a restrictive covenant is frequently sought upon the ground that its enforcement works a hardship upon the owner of the servient tenement and that its removal *will not damage the owner of the dominant tenement*. The very purpose of the restriction is to prevent the property from being devoted to a business use if it should become more valuable for such use than for residential purposes, and the fact that it would sell for more with the restriction removed would not warrant its removal. Moore v. Curry, 176 Mich. 456, 142 N.W. 839; Ludgate v. Somerville, 121 Or. 643, 256 P. 1043, 54 A.L.R. 837; Rombauer v. Compton Heights Church, 328 Mo. 1, 40 S.W.2d 545.

In *Bickell, supra,* the Opinion as quoted by our Supreme Court, continues by stating that, if the plaintiffs may devote their properties to business uses, it can only be on the ground that the whole purpose of the original scheme has been defeated and the preservation of the original character of the property is no longer possible, and it is pointed out that there has been no encroachment of business within the limits of the subdivision, which included a substantial area, and no violation of the restrictive covenants in the deeds of the various lots, and no abandonment of the original plan of a restricted residential district. It is also pointed out that the plaintiffs' case relied heavily upon the effect of the increased automobile traffic on the Post Road abutting their property, and that it was found that, as a result of the greatly increased traffic, the character of the Post Road had changed and had rendered undesirable for residential purposes plaintiffs' property immediately fronting upon it, which property would be worth greatly in excess of its then value if the restrictions were removed. Nevertheless, the relief sought by the plaintiff was denied.

Being convinced that the learned Chancellor was in error in ordering a cancellation of the restrictive covenants on the nine lots in question, which action would directly affect all of the owners of the lots in Echo Meadows Subdivision, and each of them, we sustain the 9th assignment of error of appellants and reverse the Chancellor's decree and dismiss complainants' bill at their cost.

Reversed and dismissed.

PURYEAR and TODD, JJ., concur.