# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

May 29, 1998

Cecil W. Crowson
Appellate Court Clerk

WAYNE MOORE and wife            )
DONNA MOORE,                    )
                                )
    Plaintiffs/Appellees,       )            Sequatchie Chancery
                                )            No. 1645
VS.                             )
                                )
RANDALL PHILLIPS, SR. and wife  )            Appeal No.
MAYME PHILLIPS;                 )            01A01-9605-CH-00197
RANDALL F. PHILLIPS, JR. and wife )
MICHELLE PHILLIPS; and          )
KENNETH LYNN HERRON,            )
                                )
    Defendants/Appellants.      )


APPEAL FROM THE CHANCERY COURT
FOR SEQUATCHIE COUNTY
AT DUNLAP, TENNESSEE


THE HONORABLE JEFFREY F. STEWART, CHANCELLOR


For Plaintiffs/Appellees:                For Defendants/Appellants:

Stephen T. Greer                         Howard L. Upchurch
Dunlap, Tennessee                        Pikeville, Tennessee


## AFFIRMED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

**O P I N I O N**

This appeal involves the enforcement of restrictions on the use of property in a rural subdivision in Sequatchie County. After their neighbors permitted a mobile home to be placed on their property, two property owners filed suit in the Chancery Court for Sequatchie County seeking to enforce common restrictions against mobile homes. The trial court upheld the restrictions and directed the removal of the mobile home. The owners of the property on which the mobile home was located and the owner of the mobile home have appealed. We have determined that the evidence supports the trial court's decision to enforce the restrictions and, therefore, affirm the judgment.

**I.**

Alton and Olena Rogers owned several acres of undeveloped land along State Highway 28 and West Valley Road in the Doss Community in southern Sequatchie County. They decided to divide the property into smaller individual parcels to be sold as single family home sites. Beginning in February 1977 and continuing through January 1979, Mr. and Mrs. Rogers sold seven separate parcels from one to three acres in size to various buyers.

Mr. and Mrs. Rogers never recorded a subdivision[1] plat or any other uniform declaration of restrictions governing the use of the subdivided property. Instead, they included restrictions in five of the seven deeds, but even these restrictions were not uniform or consistent. The restrictions covered: (a) using the property for residential purposes only, (b) not using the property for commercial purposes, (c) constructing a single residence with at least 1,000 square feet, and (d) prohibiting mobile homes temporarily or permanently. The restrictions in the deeds to each of the seven parcels are as follows:

---

[1]Subdivision means any division of land into parcels of less than five (5) acres for the purpose, whether immediate or future, of sale or building development, and includes resubdivision and, when appropriate to the context, relates to the process of resubdividing or to the land or area subdivided. *See* Tenn. Code Ann. § 13-3-401(4)(B) (1992).

| Tract No. | Date of Original Sale | Original Purchaser | Applicable Restrictive Covenants |
|-----------|----------------------|--------------------|----------------------------------|
| 1 | 2/9/77 | Moore | a, b, c, & d |
| 2 | 3/23/77 | Moore | a, b, c, & d |
| 3 | 3/31/77 | Frizzell (now Phillips) | a, b, & d; and c with a minimum 1200 sq. ft. restriction |
| 4 | 4/25/77 | Bowman (now Higdon) | none |
| 5 | 6/6/77 | Bowman (now Higdon) | a, b, c, & d |
| 6 | 5/6/78 | Roberts (now Moore) | none |
| 7 | 1/16/79 | Moore | d |

In February and March 1977, Wayne and Donna Moore purchased two adjoining tracts, totaling three acres, and constructed a 2,100 square feet brick home. In January 1979, Mr. and Mrs. Moore acquired another one-acre tract adjoining the first two they had already purchased. In 1986 they purchased another adjoining two-acre tract from Mr. and Mrs. Charles Vandergriff who had purchased the property from Mr. and Mrs. Lonas C. Roberts, who had purchased it in 1978 from Mr. and Mrs. Rogers.

In March 1977 Mr. and Mrs. Rogers sold a 2.5 acre tract adjoining the Moores' property to Terry D. and Rhonda Frizzell. In 1993 the Frizzells sold their property to Randall and Mayme Phillips. The warranty deed, recorded September 29, 1993, contained the following express restrictions:

> This conveyance is made subject to the following restrictions, limitations, and reservations, which shall be binding upon the purchaser and all future owners:
>
> 1. Said land shall be used for residential purposes only.
>
> 2. No commercial use of trade of non-residential activities shall be permitted on the above described lot, nor shall any commercial building be built on the above described lot.

3. Only one residence shall be built on the above described lot with a minimum of one thousand two hundred (1,200) square feet.

4. No mobile homes, temporary or otherwise, to be placed on the above described property.

Mr. and Mrs. Phillips did not improve their property and eventually decided to attempt to remove the restrictions on their use of the property from their deed. On March 22, 1994, they executed an agreement with both their immediate grantors and with the surviving original developer of the property, purporting to revoke and remove the restrictions on the property. The agreement recited:

> NOW, THEREFORE, FOR AND IN CONSIDERATION of the sum of One ($1.00) Dollar, cash in hand paid, and other good and valuable considerations, the receipt of which is hereby acknowledged, we, OLENA B. ROGERS, widow of Alton D. Rogers, and TERRY D. FRIZZELL and wife, RHONDA M. FRIZZELL, being the grantor and grantees in that certain deed dated March 31, 1977, and recorded in Deed Book 43, page 380, in the Register's Office of Sequatchie County, Tennessee, in and by which certain restrictions were imposed, and RANDALL PHILLIPS and wife, MAYME PHILLIPS, do hereby wholly and completely revoke, cancel, annul, and remove said restrictions as recited in said deed, and specify that said restrictions shall be of no further force or effect.

Mr. and Mrs. Phillips thereafter conveyed a portion of their property to their son and daughter-in-law, Randall and Michele Phillips. The younger couple constructed a house on that property. Sometime toward the end of 1994, the senior Mr. and Mrs. Phillips permitted Kenneth Herron to move a mobile home onto their remaining property and live there temporarily until the house Mr. Herron was building elsewhere was completed. Mr. and Mrs. Moore complained to Mr. and Mrs. Phillips, Sr. that the presence of Mr. Herron's trailer on their property violated the restrictions in their deeds. When Mr. and Mrs. Phillips, Sr. declined to have the trailer removed, Mr. and Mrs. Moore filed suit in the Chancery Court for Sequatchie County seeking both injunctive relief and damages for violations of the restrictive covenants that they contended applied to the property.

-4-

Following a bench trial in October 1995, the trial court found (1) that Mr. and Mrs. Rogers were the common grantors of all the parcels involved in this dispute, (2) that Mr. and Mrs. Rogers subdivided and sold their property under a common plan, (3) that the four restrictions in the deeds prepared by Mr. and Mrs. Rogers ran with the land, and (4) that the restrictions applied to all parcels at issue. The trial court also held that the restrictions were in the nature of negative reciprocal easements and could be enforced by any of the owners holding property in the common development. Accordingly, the trial court found that the attempted revocation of the restrictions on Mr. and Mrs. Phillips' property was legally void and ordered Mr. Herron to remove his mobile home from Mr. and Mrs. Phillips' property. The trial court also enjoined all the parties from violating any of the restrictions on the parcels.

## II.

It is well-settled that property owners may subdivide their property for sale and place restrictions on the use of each parcel sold for the benefit of both themselves and the buyers. *See Laughlin v. Wagner*, 146 Tenn. 647, 653, 244 S.W. 475, 476 (1922); *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982). One of the most common forms for imposing restrictions on subdivided property is for the property owner to establish a general building plan of improvement covering a tract of land divided into lots. *See Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d 923, 928 (Tenn. 1979).

Property owners may establish a subdivision plan in a number of ways. They may expressly enter into reciprocal covenants promising to insert like restrictive covenants in all deeds conveying property out of the divided tract. *See Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d at 928. They may also establish a general subdivision plan by selling lots while making oral statements inducing buyers to rely that all lots will be sold with the same restrictions. *See Arthur v. Lake Tansi Village, Inc.*, 590 S.W.2d at 928. The restrictive language contained in a series of deeds conveying parcels out of a common tract of land may also establish a general subdivision plan. *See Ridley v. Haiman*, 164 Tenn. 239, 255-57, 47 S.W.2d 750, 755 (1932); *see also Swanson v. Green*, 572 So.2d 1246, 1248 (Ala. 1990).

Where property owners intended to establish a general subdivision plan, the fact that some lots in a subdivision are sold with no restrictions does not invalidate restrictions on the other subdivided lots. *See McIntyre v. Baker*, 660 N.E.2d 348, 352 (Ind. Ct. App. 1996). A grantor may intend to establish a general subdivision plan even if the restrictions on all the lots are not perfectly identical. *See Owenby v. Boring*, 38 Tenn. App. 540, 547, 551, 276 S.W.2d 757, 760, 762 (1954).

When a property owner sells parcels of a tract and includes in the warranty deeds restrictive covenants for the benefit of other buyers, then grantees acquire not absolute, unqualified title, but rather title limited by the deed restrictions. *See Ridley v. Haiman*, 164 Tenn. at 251, 47 S.W.2d at 753. The enforceable interests arising in grantees from such restrictive covenants are now commonly known in Tennessee as reciprocal negative easements. *See Leach v. Larkin*, No. 01A01-9302-CH-00066, 1993 WL 377629, at *3 (Tenn. Ct. App. Sept. 24, 1993) (No Tenn. R. App. P. 11 application filed).

Buyers of restricted subdivision property may normally enforce such restrictions against other subdivision grantees. *See Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 912 (Tenn. 1976); *Leach v. Larkin*, 1993 WL 377629, at *3. Grantees seeking to enforce reciprocal negative easements must prove:

> (1) that the parties derived their titles from a common grantor; (2) that the common grantor had a general plan for the property involved; (3) that the common grantor intended for the restrictive covenant to benefit the property involved; and (4) that the grantees had actual or constructive knowledge of the restriction when they purchased their parcels.

*See Ridley v. Haiman*, 164 Tenn. at 256, 47 S.W.2d at 755.

Parties may lose their right over time to enforce restrictive covenants if the covenants relate to the existing condition of the property and its surroundings. If the character of the neighborhood completely changes thereby defeating the original purpose of the covenants, the courts will not enforce the covenants if to do so would be inequitable and unjust. *See Hysinger v. Mullinax*, 204 Tenn. 181, 187, 319 S.W.2d 79, 82 (1958); *Hackett v. Steele*, 201 Tenn. 120, 129, 297 S.W.2d 63, 67 (1956).

Courts will likewise decline to enforce reciprocal negative easements where their purpose has been defeated by a radical change in the character of the neighborhood. *See Hackett v. Steele*, 201 Tenn. at 129, 297 S.W.2d at 66.

It is undisputed that all the parties in this case derived their titles from a common grantor. It is also undisputed that Mr. and Mrs. Phillips had constructive notice, by virtue of their warranty deed, of the restrictions on the property when they purchased their lot. The dispositive issue in this appeal is thus whether the trial court erred in holding that Mr. and Mrs. Rogers had a general plan or scheme for the subdivision of the property. The trial court found that such a general subdivision plan existed. We review that determination de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. Rule 13(d); *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996).

The evidence makes plain that when the Mr. and Mrs. Moore purchased the original subdivision parcels, they wanted restrictions within the entire subdivision prohibiting both mobile homes and the placement of more than one residence on a parcel. Mr. and Mrs. Rogers placed restrictive covenants to that effect in the deeds covering the first three parcels. The price Mr. and Mrs. Moore paid for their original parcels reflected its restricted nature, and as buyers, they relied on those restrictions. The fact that the last parcel they purchased was unrestricted by deed did not matter to Mr. and Mrs. Moore because they intended to use the property consistent with the general subdivision restrictions.

Mr. and Mrs. Rogers did not place the restrictions on the property for their personal benefit. They did not live on the property, and once they subdivided the tract, they sold all the parcels without retaining any of the land for themselves. Although the parcels by deed are not perfectly, uniformly restricted, the restrictions used are similar in aim and are all consistent with the development of a single-family frame home neighborhood. The evidence does not preponderate against the trial court's conclusion that Mr. and Mrs. Rogers, as the common grantors, intended to establish a general subdivision plan for the property. Therefore, Mr. and Mrs. Moore could properly insist on the restrictions' enforcement.

We are not persuaded that Mr. and Mrs. Moore's conduct in having a barn, some farm equipment, and a few head of livestock on their parcels constituted a "commercial use" of subdivision property that would estop them to enforce the subdivision restrictions. The evidence does not preponderate against the trial court's finding on that point. Nor are we persuaded that the area around the subdivision has so radically changed since the late 1970's so as to make it inequitable now to enforce the subdivision restrictions. When Mr. and Mrs. Moore bought their first lots in 1977, an established trailer park existed on the opposite side of West Valley Road. The park in 1977 had twenty-five or twenty-six trailers; its former owner testified that two or three years ago, when he sold the park, it had "close to thirty." That hardly constitutes a radical change in the neighborhood's character. As to the other development pointed to by Mr. and Mrs. Phillips, it is outside the subdivision.

Mr. and Mrs. Phillips and their allies also contend that even if Mr. and Mrs. Rogers originally sold the parcels pursuant to a general subdivision plan, Mrs. Rogers, and Mr. and Mrs. Frizzell, as mesne grantors, later "released" the subdivision restrictions on Mr. and Mrs. Phillips' lot. Mr. and Mrs. Phillips argue that because deeds are contractual instruments, the parties to a deed can, by agreement, change the contractual terms post-sale to remove subdivision restrictions.

The trial court correctly rejected that argument as a matter of law. Subdivision restrictions are intended to benefit all lot owners within a subdivision, and any attempted unilateral release of the restrictions without the assent of the other subdivision owners is of no effect. *See Ridley v. Haimon*, 164 Tenn. at 247, 47 S.W.2d at 752; *Caudill v. Hamlet*, 490 S.W.2d 538, 542 (Tenn. Ct. App. 1972); *Gercas v. Davis*, 188 So.2d 9, 11 (Fla. Dist. Ct. App. 1966); *Water's Edge Homeowners' Ass'n, Inc. v. Weissman*, 614 N.Y.S. 2d 67, 68-69 (App. Div. 1994); *Smith v. Butler Mountain Estates*, 375 S.E.2d 905, 908 (N.C. 1989); *Farmer v. Thompson*, 289 S.W.2d 351, 355 (Tex. Civ. App. 1956). The trial court correctly gave no effect to the March 22, 1994 Revocation and Removal of Restrictions.

### III.

We affirm the judgment and remand the case to the trial court for whatever further proceeding may be required.  We also tax the costs of this appeal, jointly and severally, to Randall Phillips, Sr., Mayme Phillips, Randall Phillips, Jr., Michelle Phillips, and Kenneth Herron, and their surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE