IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 2, 2021 Session

**SEVERIANO MARTINEZ RUBIO, ET AL. v. BB&J HOLDINGS, ET AL.**

Appeal from the Circuit Court for Hamblen County
No. 2015-CV-068    Alex E. Pearson, Judge

_____

**No. E2020-00355-COA-R3-CV**

_____

This is a case for the enforcement of a restrictive covenant prohibiting commercial use of lots in a residentially restricted neighborhood.  The trial court awarded the plaintiffs nominal damages in the sum of $500 against one defendant and denied the plaintiffs' requests for specific equitable performance and injunctive relief and for punitive damages. The plaintiffs appeal.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KRISTI M. DAVIS, JJ., joined.

Betsy Stibler, Morristown, Tennessee, and Linda L. Noe, Knoxville, Tennessee, for the appellants, Severiano Martinez Rubio and Maria Rubio.

J. Eric Harrison, Knoxville, Tennessee, for the appellees, Don Bunch, Michael Bunch, Moe Jones, and BB&J Holdings.

Lauren A. Carroll, Morristown, Tennessee, for the appellee, City of Morristown.

**OPINION**

**I.  BACKGROUND**

Sunset Addition is a residential neighborhood in Morristown, Tennessee ("the City").  Recorded restrictions on the lots in the subdivision require "residential purpose only" and that "no commercial activit[i]es may be carried o[ut] on these premises."  In

1999, such restrictions were released as to lots 3, 4, 5, and 6 (lots that front Andrew Johnson Highway). When the defendant, BB&J Holdings ("BB&J"), purchased lots 19 and 20 in Sunset Addition (hereinafter referred to as "the Britt Property") on October 17, 2013, the "residential purpose only" and "no commercial activities" restrictive covenants for Sunset Addition lots were noted in the title opinion. BB&J purchased the Britt Property for the sole purpose of utilizing it in the construction of a road, Sandstone Drive,[1] from the Masengill Springs commercial development to Walters Drive, the main thoroughfare through Sunset Addition. BB&J razed the existing property on lots 19 and 20 to construct the secondary ingress/egress required by contract with Food City, the lead tenant in the development. Mike Bunch, lead developer of BB&J, was aware when the lots were purchased that they were subject to restrictive covenants and that these restrictions were noted in the title opinion for the property. However, according to Mr. Bunch, "in our eyes there was no restrictions."

The plaintiffs ("the Rubios") own lots 21 and 22 of Sunset Addition. They acquired the property in 2001, owning it along with Sylvia Barile; they later gained her interest in 2007. In their original complaint, the Rubios alleged that the development of lots 19 and 20 as a roadway not only violated the restrictive covenants of Sunset Addition but interfered with their use and enjoyment of their property. They sought injunctive relief, specifically the closure of the portion of Sandstone Drive constructed on lots 19 and 20 and the removal of a commercial sign erected on the property. The amended complaint did not name the City as a party, nor did it specifically request closure of Sandstone Drive. The Rubios specifically alleged:

> As a result of the design and construction of a turn lane leading to Developer's commercial driveway hazardous conditions have been created that both impair Plaintiffs' use of their driveway and endanger Plaintiffs' safe entrance into and exit from their property.

The Rubios contended that the roadway resulted in a distinct increase in traffic, causing serious disruption of their normal routine and interfering with the tranquility and quiet enjoyment of their home. They sought compensatory damages, punitive damages, and damages for pain and suffering.

After a hearing on November 7, 2019, the trial court held:

> The Court finds that the Sunset Addition lots purchased by BB&J Holdings for the purposes of constructing a road into the Masengill Springs development do contain restrictive covenants in the deed . . . . The Court

---

[1]The entirety of Sandstone Drive was dedicated to the City upon completion of the commercial development. During the pendency of this case, BB&J tendered a quit claim deed to the City for Sandstone Drive, including the portion that traverses the Britt Property.

finds that said language if still enforceable would not permit the road created by BB&J to allow commercial traffic to enter and exit from the businesses located in the Masengill Springs development . . . . Furthermore, Mike Bunch, principal developer on this project, acknowledged in his testimony that he was aware of the restrictive covenants but felt like they did not apply to limit his roadway across the residential lots that were previously used for housing. Mr. Bunch indicated that the residential restrictive covenants he had dealt with in the past are limited to 20 years . . . . Furthermore, Mr. Bunch testified that he had used Attorney Ron Perkins to handle the property acquisition and did not believe he was violating any restrictions. The Court notes that the restrictive covenants in this case contain no such limiting language and that an arbitrary limitation of 20 years on restrictive covenants that have no expiration has been previously held to not be appropriate. [S]ee *Elm Hill Homes, Inc. v. Jessie*, 857 S.W.2d 566 (Tenn. Ct. App. 1993).

* * *

Mrs. Rubio testified that the increased lighting put in place in the Masengill Springs development was bothersome on their property and that the traffic going into the development made accessing their property more difficult. Mrs. Rubio also testified that she was concerned that homeless people were living in the area behind the Sunset Addition subdivision and the Masengill Springs development. Mr. Bunch denied that there was a homeless problem and if there was he would want to get it taken care of to prevent his tenants in the development from being upset. Mrs. Rubio then went home during the lunch break and took a photograph of what appeared to be someone's tent in the area she was complaining of homeless people living in. Mrs. Rubio also testified that they went to City Hall to complain about the construction going on but were told that there was nothing that could be done about it. Mrs. Rubio also acknowledged that they were aware about the public meetings concerning the Masengill Springs development but that they could not attend due to their work. Mrs. Rubio further acknowledged that they knew nothing about the restriction against commercial use contained in the restrictive covenants and only became aware of them when Attorney Linda Noe approached them about filing a lawsuit. The Court finds both parties to be credible and finds the pertinent facts to be largely undisputed.

The defendants spent a great deal of time focused on establishing how much the surrounding area has changed from a largely rural section of Hamblen County in 1951 into a largely commercial hub of the City of Morristown today. The defendants introduced aerial photos of the surrounding area to show that in the immediate area there is now a Home Depot, Weigel's gas station, CVS pharmacy, along with several other commercial properties that

- 3 -

are all separate and unrelated to the Masengill Springs development at issue before the Court. . . . The Court finds of particular interest the fact that Weigel's and CVS are both built on former residential lots that were subject to the same restrictive covenants at issue in the current case; however, the developers for those lots obtained releases of the restrictions for those properties to allow such use. . . . The defendants further relied on traffic impact study performed prior to getting city approval of the Masengill Springs development. . . . The traffic study provided that the average daily traffic count for Walters Drive was 6,390 as of 2011. This information is significant to the court's analysis because Walters Drive is the main road that traverses the center of the Sunset Addition subdivision.

The Court also finds the rezoning of the properties from residential to planned commercial district at issue instructive as to the changed nature of the properties at issue. . . . While such rezoning in and of itself does not render the restrictive covenants unenforceable, the Court can certainly take such rezoning into consideration in determining whether the changing circumstances of the properties render the restrictions no longer enforceable. *See Hysinger v. Mullinax*, 319 S.W.2d 79 (Tenn. 1958). The Tennessee Supreme Court confirmed in *Mullinax* that when the nature and character of a restricted neighborhood has changed of such a degree as to render equitable specific performance unenforceable then equitable relief will be denied and the party will have to seek remedy at law. The Court finds that the nature and character of the Sunset Addition has changed to such a degree that equitable enforcement is not appropriate under *Mullinax* to order closure of the completed road. The Court finds that when the restrictions were put in place the subdivision was not even within the city limits of Morristown. . . . The subdivision was created to be a quiet residential subdivision with no commercial activity in or around it; however, as time marched on, the subdivision completely lost its calm and quiet character as the subdivision entrance transformed from a road used to enter or exit the subdivision into a heavily used thoroughfare with an average daily traffic count of over 6,000. The neighborhood further transformed by becoming completely encapsulated in commercial activity as detailed above. The Court finds it particularly interesting that the subdivision released the restrictions on some of the subdivision properties to allow a gas station and CVS pharmacy to be built inside the area that the restrictions were supposed to prevent commercial activity from encroaching upon.

The Court next turns its attention to see what if any damages the plaintiffs have established, and the Court finds that the plaintiffs failed to offer or introduce any evidence of economic damages and relied on the testimony

- 4 -

and photographs of the plaintiffs as to the difficulties suffered with increased light pollution, increased difficulty entering and exiting their property, and some concerns that homeless people were occupying part of the property between their home and the Masengill Springs development. The plaintiffs did not attempt to quantify during their proof an amount of economic damages that they had suffered and instead focused their attention on specific performance. The Court reviewed the case of *Womack v. Ward*, 186 S.W.2d 619 (Tenn. Ct. App. 1944) and finds that while the plaintiffs have failed to establish any economic loss as a result of the violation of the restrictive covenants the plaintiffs are nonetheless entitled to nominal damages under the facts of this case. . . . The Court finds that nominal damages in the amount of $500 are appropriate given the facts and circumstances of this case and those damages are assessed against BB&J Holdings. The Court awards no damages against the City of Morristown as BB&J was the developer of the [S]andstone Drive roadway that violates the restrictive covenant against commercial use contained in the Sunset Addition restrictions.

(Numbering of paragraphs omitted). Thus, except for the award of nominal damages against BB&J, the requests for specific equitable performance and injunctive relief and for punitive damages were denied. The court further dismissed the individual claims against Michael Bunch, Don Bunch, and Moe Jones. The Rubios timely filed this appeal.

## II. ISSUES

The issues raised by the parties are restated as follows:

I. Upon finding that BB&J developed the roadway that violates the restrictive covenants, did the trial court properly apply the law as it pertains to enforcement of restrictive covenants.

II. Did the trial court properly hold that the restrictive covenants for the properties in Sunset Addition were not subject to equitable enforcement due to the change in the "nature and character of the Sunset Addition."

## III. STANDARD OF REVIEW

Our review of the case is de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d); *see also Beacon Hills Homeowners Ass'n v. Palmer Properties, Inc.*, 911 S.W.2d 736, 737 (Tenn. Ct. App. 1995).

# IV. DISCUSSION

The courts of this state have stated on numerous occasions that restrictive covenants are not favored in Tennessee, as being in derogation of the free use and enjoyment of property. *Hillis v. Powers*, 875 S.W.2d 273, 275 (Tenn. Ct. App. 1993). "Notwithstanding the state's preference for the freedom of private owners to use their land as they see fit, the courts will uphold covenants running with the land where the intent of the parties to bind their remote successors can be determined by the language of the covenant and the circumstances of its making. *Id.* "[T]he mere passage of time alone, without a sufficient change of circumstances will not operate to terminate a valid covenant." *Id.* at 276.

In the case before us, the restrictive covenants are more than 60 years old. In 1950, when Sunset Addition was first established, the properties were still on the outskirts of the City. As early as 1960, commercial development began to both encroach upon and make use of Sunset Addition properties. Since 1999, Lots 3, 4, 5, and 6 have been used exclusively for commercial purposes.

The leading case in Tennessee on "changed conditions" is *Hackett v. Steele*, 297 S.W.2d 63 (Tenn. 1956). In *Hackett*, it was argued that through the lapse of time from 1922 to 1954, vast changes had taken place in the area around the subdivision, and that various shops, restaurants, gas stations, and stores had built up. *Id.* at 64. The Supreme Court held:

> The creation, in a building development scheme, of an area restricted to residential purposes, contemplates the continued existence of such an area from which business is excluded. That it also contemplates that business may extend to the confines of the area is apparent, since it is to prevent the encroachment of such business into the protected area that the restrictions are created. Purchasers of lots in such an area buy in reliance upon the fact that all other lots in the area are subject to the same restrictions as those contained in their own deeds, and that the entire development will retain its character as a purely residential district.
>
> * * *
>
> It is only when there has been a radical change in the conditions existing when the restrictive covenants were created which completely defeats the objects and purposes of the covenants so that they are no longer effective, and their enforcement would not afford the protection which was in the contemplation of the parties, that equity will hold the restrictions no longer enforceable.

*Id.* at 67 (quoting *Bickell v. Moraio*, 117 Conn. 176, 181, 167 A. 722 (Conn. 1933)).

Restrictive covenants "can lose their force when they fail to serve a useful purpose" and "may be rendered unenforceable if radical changes in the character of the entire neighborhood completely defeat the purpose of the covenant." *Hewgley v. Vivo*, No. 01A01-9506-CH-00266, 1997 WL 92077 at *2 (Tenn. Ct. App. Mar. 5, 1997). "When determining whether a restrictive covenant continues to serve any useful purpose, the courts must be concerned primarily with the continuing value of the restrictive covenant to the entire neighborhood, not the hardship to the parties attempting to avoid the restrictive covenant." *Id.*

In the record before us, not only has the nature of the community surrounding Sunset Addition changed but Sunset Addition itself has been changed. Since the 1990s, CVS, Weigels, National Fitness Center, and the shopping center containing the AT&T store have all been commercially developed on Sunset Addition lots and paved driveways for ingress and egress onto Walters Drive have been established without recorded complaint. The development of businesses on several of the other residential lots, as well as the growth and development of the surrounding area, persuades us that the restrictive covenants in this case have diminished value to the entire neighborhood.

Significantly, the right to enforce a restrictive covenant can be forfeited due to acquiescence via waiver or estoppel:

> This is so . . . where, by failing to act, one leads another to believe that he is not going to insist upon the covenant, and such other person is damaged thereby, or whereby landowners in a tract or subdivision fail to object to general and continuous violations of restrictions. If the party entitled to the benefit of the covenants in any way by inaction lulls suspicion of his demands to harm of the other or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse aid.

*Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn. Ct. App. 1994) (quoting 20 Am. Jur. 2d *Covenants, Conditions, Etc.* § 273 (1965)). As the record reflects, neither the Rubios nor any other resident of Sunset Addition, at any point, lodged a formal complaint about the development, sought to enjoin the razing and developing of the lots, or filed suit prior to or even during the development. As argued by BB&J, the Rubios, who acknowledged that they had not read the restrictive covenants before they purchased the property, had no expectations as to them. Because they were not aware of the restrictive covenants, the restrictions were not a reason for the Rubios' purchase of a home in the subdivision.

The Rubios further failed to demonstrate any quantifiable damages or loss at trial. As noted by the trial court, "the plaintiffs failed to offer or introduce any evidence of economic damages and relied on the testimony and photographs . . . as to the difficulties suffered with increased light pollution, increased difficulty entering and exiting their

property, and some concerns that homeless people were occupying part of the property between their home and the Masengill Springs Development. The plaintiffs did not attempt to quantify during their proof an amount of economic damages that they had suffered and instead focused their attention on specific performance." Any harm suffered by the Rubios was de minimis. For the foregoing reasons, the trial court properly held that the restrictive covenants were not subject to equitable enforcement. The court was generous in awarding "nominal damages . . . in recognition of a technical injury . . . ." *Hysinger v. Mullinax*, 319 S.W.2d 79, 82 (Tenn. 1958) (quoting 25 C.J.S. Damages § 8 at 465).

## V. CONCLUSION

The decision of the trial court is affirmed and the case is remanded for such proceedings as are necessary. Costs of the appeal are taxed to Severiano Martinez Rubio and Maria Rubio.

_____
JOHN W. MCCLARTY, JUDGE

- 8 -